RUSSELL ET AL. *v.* JOHNSON ET AL.

[No. 27,821. Filed January 12, 1943.]

*Leon Kowalski* and *Henry L. Humrichouser,* both of South Bend, for appellants.

*Vitus G. Jones, Roland Obenchain, Paul M. Butler,* and *Francis Jones,* all of South Bend, for appellees.

SHAKE, J.—John Russell died as a result of an injury by accident arising out of and in the course of his employment. The appellees Rieth-Riley Construction Company and Employers Liability Assurance Corporation were, respectively, the employer and the insurance carrier. Two groups of alleged dependents claimed workmen's compensation. One of these groups consisted of the appellees Gertrude Johnson, a sister of the decedent, and Elmer Johnson, Edward Johnson, Ezel Johnson, and Erxcell Johnson, his nephews and niece. The other group was composed of the appellants Lorrine Harrison (Russell) and her children, Lance and Jacqueline Harrison (Russell), who were not related to the decedent by blood or marriage. All of the claimants asserted that they were wholly dependent upon the decedent. There was a hearing before a single member of the Industrial Board who made an award of compensation in favor of Lance and Jacqueline Harrison and against all of the other claimants. On review, compensation was denied all of the claimants by a majority of the full board, two members dissenting in favor of the appellants Lance and Jacqueline Harrison. The Appellate Court of Indiana reversed the award with directions to the Industrial Board to enter an award in favor of Lance and Jacqueline Harrison. *Russell* v. *Johnson* (1942), 112 Ind. App. —, 42 N. E. (2d) 392. The case comes to this court by petition to transfer under authority of *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. (2d) 399.

As has already been noted, the award of the hearing member was against the appellant Lorrine Harrison.

The review by the full board was had on the applications of the employer and the appellee Gertrude Johnson. Lorrine Harrison did not ask for such a review although she joined in the assignment of errors in the so-called appeal from the award of the full board to the Appellate Court. It is asserted in the petition to transfer that on this state of the record Lorrine Harrison is bound by the adverse award of the hearing member; that she had no right to a review of such award in the Appellate Court; and that, consequently, she has no standing here. With this conclusion we cannot agree. The statute does not limit the right to a review in the Appellate Court to those who joined in or asked for a review by the full board. § 40-1511, Burns' 1940 Replacement, § 16436, Baldwin's 1934. A review by the full board is on the merits and is not for errors. The hearing is *de novo* as to all parties to the proceeding and the award of the full board supersedes for all purposes the award of the hearing member. § 40-1512, Burns' 1940 Replacement, § 16437, Baldwin's 1934. *McGuire* v. *Universal Gear Corp.* (1939), 106 Ind. App. 107, 18 N. E. (2d) 474.

It is next claimed that the evidence considered by the full board was not before the Appellate Court and is not now before us because a deposition shown to have been introduced before the hearing member is not contained in the bill of exceptions, although it is conceded that it is in the transcript of the proceedings of the Industrial Board. We find nothing in the statute, the decisions, or the rules of the Industrial Board requiring a formal bill of exceptions for a review by the Appellate Court. The statute does undertake to provide that "either party to the dispute may, within thirty days from the date of such award (by the full board) appeal to the appellate court for

errors of law under the same terms and conditions as govern appeals in ordinary civil actions." Acts 1929, ch. 172, § 61, § 40-1512, Burns' 1940 Replacement, § 16437, Baldwin's 1934. It has been many times held, however, that this so-called appeal is not an appeal in fact but is in the nature of an independent action to which the proper party is entitled as a matter of right though the statute does not so provide and, indeed, if it undertakes to forbid a review. *Financial Aid Corporation* v. *Wallace* (1939), 216 Ind. 114, 23 N. E. (2d) 472. The quoted provision must, therefore, be construed to relate to the mechanics of presenting the case in the Appellate Court rather than to the manner of saving questions before the Industrial Board. This seems to be the construction placed on the act by the board. Its Rule No. 26, May 29, 1941, provides:

> "Any party desiring to appeal from an award of the industrial board must file with the secretary of the board within fifteen [15] days from the date of such award a written praecipe designating specifically the pleadings and order-book entries to be incorporated into the transcript for such appeal." 1 Horack's Indiana Administrative Code, § 40-1512-1.

Another rule of the board, No. 25, May 29, 1941, provides that a transcript of evidence will be furnished on the written order of the party desiring the same. 1 Horack's Code, § 40-1507-3. If the practice relating to appeals in ordinary civil actions should be held to apply to the proceedings before the Industrial Board, its Rule No. 26 would be in violation of § 2-3112, Burns' 1933, § 466, Baldwin's 1934, which places no restrictions upon the time within which a party desiring to appeal may request a transcript, other than that which necessarily follows from the limitation within which the appeal must be perfected. We find no reason for invali-

dating the board's rule. The Industrial Board is an administrative agency, not a court. The only function of a judicial review of its proceedings is to ascertain if, in the broad sense, the requirements of due process have been met. When the sufficiency of the evidence to support the finding of an administrative agency is chal-. lenged, the proper court will either conduct an independent inquiry to ascertain the facts upon which the agency acted or look to the evidence which was before it, depending upon the legislative scheme under which the agency operates. *Warren* v. *Indiana Telephone Co.*, *supra*. The Indiana Workmen's Compensation Act of 1929 makes ample provision for preserving and perpetuating the evidence heard by the board. A duly certified transcript of the proceedings, including the evidence, and a proper showing that the record is full and complete are all that is necessary to enable the reviewing court to discharge its responsibilities. These requirements were fully met in the instant case and we are unconcerned with the circumstance that the deposition is not contained in that part of the transcript denominated the bill of exceptions. The deposition is in the transcript; it was considered by the board; and the record before us contains all of the evidence. This is sufficient.

The appellee's employer and insurance carrier also assert that the evidence was not before the Appellate Court because the condensed recital thereof contained in the appellants' brief entirely omitted an exhibit and the testimony of five witnesses. This is true, and the appellants' explanation thereof as set forth in their original brief was as follows:

"In making a concise statement of this record Appellants are omitting the testimony and pro-

ceedings relative to the claim of the Appellees Johnson, as it can have no bearing on the findings of this court relative to the Appellants Russell and would only needlessly lengthen this brief."

Ordinarily, it is not for an appellant to determine that certain evidence is irrelevant and he will not be heard to say that he has made a good-faith effort to comply with the rule when he has purposely omitted a part thereof from his condensed recital. *Humphrey* v. *Pleasure Park Company* (1933), 97 Ind. App. 592, 187 N. E. 682. The case at bar presents an unusual situation, however. Two independent proceedings were instituted before the Industrial Board at different times by different groups of applicants. The appellants constitute one of these groups and the appellees Johnson the other. The Industrial Board found against the Johnsons and they, having failed to appeal, were named as appellees. The testimony omitted from the appellants' brief was that of witnesses produced by the Johnsons in their unsuccessful effort to establish their claims. We think we have here, in effect, an application of the principle of consolidation of actions in the Industrial Board. There is no statute in this State regulating the consolidation of actions and we must look to the common law to determine the grounds for and the effect of a consolidation. This subject was thoroughly considered by the Supreme Judicial Court of Massachusetts in *Lumiansky* v. *Tessier* (1912), 213 Mass. 182, 188, 189, 99 N. E. 1051, 1053, 1054, Ann. Cas. 1913E 1049, 1052, 1053. Chief Justice Rugg speaking for that court said that the phrase, "consolidation of cases," has been used in three different senses, namely:

"Where several cases are pending upon different causes of action, involving in substance but one question, a court has inherent power to prevent

the scandal to the administration of justice which would result from a trial of each case separately, and as one method of avoiding it may stay proceedings in all cases but one, and see whether the disposition of that one may not settle the others. Without tracing its history, this procedure is now firmly settled as a part of the common law . . .''

"When several cases are pending which might have been made the subject of a single suit or action, the court may enter an order which shall fuse the several proceedings into a single one. The original actions lose their identity and become merged into the one in which alone the rights of the parties will be determined. Thereafter they are conducted not as separate and distinct actions or suits, but as one . . .''

"Where several causes are pending between the same or different parties which grow out of a single transaction or which involve an inquiry into the same event in its general aspects, although the details of evidence may vary materially in fixing responsibility, the court may order them tried together. But they continue separate so far as concerns docket entries, verdicts, judgments and all aspects save only the one of joint trial. This is a frequent practice, and finds many illustrations in our decisions. . . . The effect of a consolidation of this character was stated by Lurton, Circuit Judge, in *Toledo, St. Louis & Kansas City Railroad* v. *Continental Trust Co.*, 36 C. C. A. 155, at p. 164 (95 Fed. Rep. 497, 506,) as follows: 'Such consolidation is primarily but an expedient adopted for saving costs and delay. Each record is that of an independent suit, except in so far as the evidence in one is, by order of the court, treated as evidence in both. The consolidation does not change the rules of equity pleading, nor the rights of the parties, as those rights must still turn on the pleadings, proofs, and proceedings in their respective suits. The parties in one suit do not thereby become parties in the other, and a decree in one is not a decree in the other, unless so directed.' ''

While the Industrial Board is not bound by the rules of civil procedure we think, nevertheless, that it may

be considered that the board effectuated a practical consolidation of the Harrison and Johnson claims for the purpose of the hearing only, under the rule last quoted from the Massachusetts case. On that view it is not necessary for us to consider the evidence relating exclusively to the Johnson application, and there was no need for the appellants' brief to contain a condensed recital thereof.

The appellants' brief evidences a substantial and good-faith effort to comply with Rule 2-17 (f) of this court. We are not impressed by the appellees' claim that the assigned errors are not supported by appropriate propositions, points, and authorities.

On the merits, the appellees Rieth-Riley Construction Company and the Employers Liability Assurance Corporation say that the Appellate Court substituted "its finding and determination of the question of the fact of dependency for the contrary finding and determination of the Industrial Board." This, if true, would be improper. A determination of a question of fact by the Industrial Board is conclusive if it is supported by any substantial evidence including reasonable inferences that may be drawn therefrom. Where the facts are uncontroverted and only one inference can be drawn therefrom, the question of dependency becomes one of law for the reviewing court. *King* v. *Illinois Steel Corp.* (1931), 92 Ind. App. 456, 176 N. E. 161.

The undisputed facts of this case are as follows. Lorrine Harrison and Lance Harrison, Sr., were married at Benton Harbor, Michigan, on January 9, 1928. Two children were born to them, namely, Lance Harrison in 1931 and Jacqueline Harrison in 1932. About the time of the birth of Jacqueline the parents separated because Lance Harrison, Sr., failed to support

his family and he has not since done so. Following the separation Lorrine Harrison took her children to East St. Louis, Illinois, where she lived with them for about two years and then returned to Michigan. She had known John Russell when they were children in Tennessee. In 1935 John Russell asked Lorrine Harrison and her children to come to South Bend, Indiana, and live with him. This, Lorrine Harrison consented to do and they lived together in the relationship of man and wife, except for about three months, until the death of John Russell on October 22, 1940. Lorrine Harrison assumed the name of Russell and was considered in the community to be the wife of John Russell. Her children likewise took the name of Russell and were so known in the community and in the school which they attended. Later, Lorrine Harrison's father became a member of the household. John Russell was employed on WPA for the most of the time and he turned over all of his earnings to Lorrine Harrison, who used the same in paying rent and in purchasing necessities for the members of the household. In the early part of 1940 Lance Harrison, Sr., requested his wife and children to return to him. They did so and lived with him in Chicago for about three months when they again left because of non-support. John Russell provided transportation for Lorrine Harrison and her children back to his home in South Bend. On one occasion Lance Harrison, Sr., visited his children in the home maintained by his wife and John Russell. Lorrine Harrison and her children had no means of support other than that furnished by John Russell. He procured insurance on his life payable to Lorrine Harrison as beneficiary and who was referred to in the application as the insured's wife. He also carried insurance on her and her children. John

Russell was never married and Lance Harrison, Sr., is living. He and his wife have never been divorced.

After considering the above facts, the full Industrial Board found that:

> "Lance Harrison and Jacqueline Harrison, the minor children of Lance Harrison, Sr., and Lorrine Harrison, were not the legal or actual dependents of the said John Russell, deceased, but that they were indirectly maintained from funds contributed to their Mother while living in adultery with the deceased, John Russell, and further finds that Lorrine Harrison was not a legal dependent of the deceased, John Russell, but was being illegally maintained and supported by the said John Russell at the time of his death."

On the same facts the Appellate Court concluded as a matter of law that:

> "No one can effectively deny that under the facts in this cause these minor appellants were dependent in fact upon the deceased employee for the necessities of life."

> "Their mother Lorrine Harrison did not appeal to the full Industrial Board from a finding and award of the hearing member denying her compensation, so no question is presented for determination as to her dependency, . . ."

The portion of our statute enumerating what persons may be regarded as dependents of a deceased employee is as follows:

> "The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:
>
> "(a) A wife upon a husband . . .
>
> "(b) A husband, who is both physically and financially incapable of self-support, . . .
>
> "(c) A child under the age of eighteen years upon the parent with whom he or she is living at the time of the death of such parent.

"(d). A child under eighteen years upon the parent with whom he or she may not be living at the time of the death of such parent, but. upon whom, at such time, the laws of the state impose the obligation to support such child.

"(e) A child over the age of eighteen (18) years who is either physically or mentally incapacitated from earning his or her own support, upon a parent with whom he or she is living at the time of the death of such parent, or upon whom the laws of the state at such time impose the obligation of the support of such child.

"As used in this section, the term 'child' shall include stepchildren, legally adopted children, posthumous children and acknowledged illegitimate children, but shall not include married children; the term 'parent' shall include step-parents and parents by adoption'

"In all other cases, questions of total dependency shall be determined in accordance with the fact, as the fact may be at the time of the death, and (the) question of partial dependency shall be determined in like manner as of date of the injury. . . ." Acts 1929, ch. 172, § 38, p. 536, § 40-1403, Burns' 1940 Replacement.

If any of the appellants are dependents of John Russell, it must be under the last paragraph of that part of the statute above quoted. In construing a similar provision of the Workmen's Compensation Act of 1915 (Acts 1915, ch. 106, § 38), the Appellate Court said in the case of *In re Carroll* (1917), 65 Ind. App. 146, 153, 154, 116 N. E. 844, 846:

"Our act does not define dependency, and does not specifically indicate who are dependents, except as to persons included within the conclusive presumption of total-dependency features of the act. Courts as a rule, in determining questions of dependency and who are dependents, resort to description, to an outlining of the elements rather than to definition. Stated generally, a dependent is one who looks to another for support and maintenance; one who is in fact dependent; one who

relies on another for the reasonable necessities of life . . . .

"Among the elements that are *indicia* of a state of dependency are: an obligation to support; the fact that contributions have been made to that end; that the claimant in any case is shown to have relied on such contributions and their continuing; and the existence of some reasonable grounds as a basis for probability of their continuance or of a renewal thereof if interrupted. We would not be understood as indicating that all these elements must exist in each case in order that there may be a state of dependency. As a rule, to which there are exceptions, however, the fact that contributions have been made is an essential element of a state of dependency within the meaning of the act."

The evidence conclusively establishes that for approximately five years immediately prior to the death of John Russell the appellant Lorrine Harrison and her children were actually dependent upon him for their support. We think also that the maintenance of the family relationship during that period; the fact that John Russell held out Lorrine Harrison as his wife in the community where they lived and made her the beneficiary of his life insurance; and the fact that he permitted her children to assume his name and supported them under the circumstances shown, were sufficient to establish a reasonable expectation on the part of said appellants that such support would continue. If the evidence does not as a matter of law establish dependency in favor of said appellants under the terms of our compensation law, it must be solely on account of the admitted fact that Lorrine Harrison lived in a state of adultery with John Russell. By way of illustration, we venture to assert that if Lorrine Harrison had been John Russell's sister and he had supported her and her children under all the other circumstances

of this case there would be no question as to her dependency; and, likewise, the result would have been the same if he had rendered such support in a situation where there was no actual or presumptive evidence of an adulterous relationship. In other words, it appears from the finding of the Industrial Board that the controlling fact in its determination was the unlawful living together of John Russell and Lorrine Harrison. In *Warren* v. *Indiana Telephone Co.*, *supra*, we said that one of the factors that will induce the setting aside of a finding of an administrative agency is that the result of the hearing was substantially influenced by improper considerations. Should we conclude, therefore, that the illegal relationship between John Russell and Lorrine Harrison does not preclude her from compensation benefits the award should be reversed as ·to her.

Our statute does not in terms exclude a woman who has shared an adulterous relationship with a man from receiving compensation as his dependent. If such a principle exists in our law, it must be on account of public policy. This court has ·said that the public policy of this State will be determined from a consideration of its Constitution, its statutes, the practice of officers in the course of administration, and the decisions of its courts of last resort. *Hogston* v. *Bell* (1916), 185 Ind. 536, 112 N. E. 883. The statute makes adultery a misdemeanor in this State, punishable by fine or imprisonment in the county jail or both. Acts 1905, ch. 169, § 457, § 10-4207, Burns' 1942 Replacement, § 2578, Baldwin's 1934. Adultery may be a ground for divorce in this State. § 3-1201, Burns' 1933, § 907, Baldwin's 1934. A spouse who has left his or her mate and is living in adultery at the time of the mate's death is barred from inheriting from the latter's estate.

§§ 6-2329 and 6-2330, Burns' 1933, §§ 3330 and 3331, Baldwin's 1934. A husband is not criminally liable for deserting his wife when her adultery was the cause of the separation. § 10-1401, Burns' 1942 Replacement, § 2885, Baldwin's 1934. We have found no case in the decisions of this State, however, where, as a matter of public policy, adultery has been held to create a disability that does not arise out of an express statute. The Constitution is silent on the subject and we must conclude that there is no such public policy in this jurisdiction as bars the appellant Lorrine Harrison from receiving compensation if the facts otherwise justify such benefits. This matter is within the control of the General Assembly and if that body concludes on a reconsideration of the subject that the Workmen's Compensation Act of 1929 does not express the proper public policy, it is subject to amendment. It is not for us to legislate.

Our attention has been directed by the briefs of counsel to a great many decisions of the courts of other states, but we have not found these to be particularly helpful. The compensation statutes of the several states vary materially in their definitions of dependents. Some provide that as to persons in the situation of Lorrine Harrison compensation shall only be allowed to the wife of the decedent. Others limit compensation to the members of the decedent's family or household. See Schneider's Workmen's Compensation Statutes (Permanent Edition). We have found no case based upon a statute as broad as ours which throws any light upon the subject.

No factual foundation exists for the conclusion of the Industrial Board that the appellants Lance and Jacque-

line Harrison were "indirectly maintained from funds contributed by their mother while living in adultery with the deceased John Russell." Certainly, there was no positive evidence to that effect and, while it was proper for the board to draw reasonable inferences from the evidence, we are unable to find a rational basis for such a conclusion. No significance can be attached to the circumstance that the decedent turned over all of his earnings to Lorrine Harrison and that she supported her children out of such funds. If this is controlling, then, technically, at least, the decedent was likewise supported by her. The inference relied on by the appellees is dispelled by the uncontroverted evidence that the decedent voluntarily took the children into his home, held their mother out as his wife, procured insurance on their lives, and suffered them to assume his family name. These facts are wholly inconsistent with the theory that John Russell regarded Lorrine Harrison merely as his mistress for a price and that he had no interest in the use she made of her ill-gotten earnings.

The judgment of the Appellate Court is reversed as to the appellant Lorrine Harrison and affirmed as to Lance Harrison and Jacqueline Harrison, referred to in the caption as Lorrine, Lance, and Jacqueline Russell, and the cause is ordered remanded to the Industrial Board of Indiana for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 46 N. E. (2d) 219.