## FULLER *v.* DELCO REMY DIVISION OF GENERAL MOTORS CORPORATION

[No. 17,414.   Filed November 15, 1945.]

*Floyd E. Harper,* of Tipton, and *Salyer & Cleveland,* of Anderson, for appellant.

*Bagot, Free & Morrow,* of Anderson, for appellee.

HAMILTON, J.—This is an appeal from an award made by the full Industrial Board of Indiana, denying appellant compensation under the Indiana Workmen's Occupational Diseases Act.

Appellant's amended application alleged that he was an employee of the appellee at its plant at Anderson, Indiana; that while so employed, he was exposed to an occupational disease and thereby became partially disabled and was entitled to collect compensation under the Occupational Diseases Act. The amended application alleged that appellant was suffering from illness described as "aluminum poisoning and dust in his lungs and body, and complications and a disease known as silicosis and pneumoconiosis."

In its award the full Industrial Board found "that in the performance of duties for the defendant, the plaintiff was never exposed to nor did he contract an occupational disease," and upon this finding rendered its award denying appellant compensation.

The error assigned is that the award of the full Industrial Board is contrary to law.

The question presented by the assignment of error is whether the evidence in support of the appellant's claim is so conclusive in character that a finding against him could have been arrived at only through the exercise of improper considerations or influences. If the substantial evidence in the record is conflicting, it was within the exclusive province of the Industrial Board, as the trier of the facts, to weigh the evidence and determine with whom the truth lay, and its finding in that respect cannot be disturbed or our judgment as to the weight of the evidence substituted for that of the Industrial Board. *Russell* v. *Johnson* (1943), 220 Ind. 649, 46 N. E. (2d) 219; *Earhart* v. *Cyclone Fence Co.* (1936), 102 Ind. App. 634, 4 N. E. (2d) 571; *Whitehead* v. *Indiana Farm Bureau Assn.* (1935), 100 Ind. App. 651, 196 N. E. 347. On the other hand, if such evidence is without conflict and wholly in favor of the appellant and complete in all essentials necessary to recovery, the Industrial Board had no right to disregard and ignore it through bias, prejudice, mere caprice, or other improper considerations, and under such circumstances its award will be set aside upon appeal. *Bell* v. *Goody, Goody Products Co.* (decided this term, October 22, 1945), ante, p. 181, 63 N. E. (2d) 147; *Russell* v. *Johnson, supra; Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 118, 26 N. E. (2d) 399.

Section 6 of the Indiana Workmen's Occupational Diseases Act, § 40-2206, Burns' 1940 Replacement, defines an occupational disease as follows:

"(a)   As used in this act, the term 'occupational disease' means a disease arising out of and in the course of the employment. *Ordinary diseases of life to which the general public is exposed outside*

*of the employment shall not be compensable,* except where such diseases follow as an incident of an occupational disease as defined in this section.

"(b)   A disease shall be deemed to arise out of the employment, only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. *The disease must be incidental to the character of the business and not independent of the relation of employer and employee.* The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." (Our italics.)

When a statute provides its own definition of a term, or word, contained therein, the court is bound by such ·definition and must construe the language used as defined by the legislature. *Gr. Inc. Tax Dept. v. Harbison-Walker Ref. Co.* (1943), 113 Ind. App. 695, 699, 48 N. E. (2d) 834.

Reviewing the evidence in this case in connection with the statutory definition of what constitutes an occupational disease, we find that the record contains evidence to establish the following facts:   Appellant started working for appellee, Delco Remy Division of General Motors Corporation in Anderson, Indiana, October 9, 1941, and continued working for said company until the latter part of May, 1944, at which time he quit working because of his physical condition and has not worked since said date.   He did not work continu-

ously from 1941 until the date he quit work in May, 1944. He worked a few days in June, 1943, and then laid off because of illness until October, 1943. He returned to work in October, 1943, and worked until December 23, 1943, when he laid off and did not return to work until March, 1944; that he worked from March, 1944, to May 30, 1944, when he severed his employment with appellee; that he lost a total of about 13 months' time because of illness between the time he started to work for appellee in October, 1941, and the date he quit on May 30, 1944. Appellant worked in Plant No. 7, Department 714, of appellee, and the nature of his work was that of a grinder on a rough grinder which ground down metal parts of airplane motors and got them in shape for a sandblast operation which was conducted in the same room and within a few feet of·where appellant worked. When appellant ground pieces of machinery and metal parts down, an aluminum dust and sand from the sandblast operation would fly about the appellant, covering his clothes and face with such dust and grit; his head, nose, mouth, and nostrils would have dust in them, which he would blow out through his nose while at work and also at night when he returned home after work; appellant worked from 5:30 p. m. to 1:30 a. m. Appellant finally told his foreman that he would like to get off the job as he felt worn out and draggy and was afflicted with a cough, that he had difficulty breathing and had lost weight. There were blowers in the room where he worked, but they did not carry out all the dust in the room, which came from the grinders and sandblast operations.

The medical testimony was to the following effect: A Dr. Havens was appellant's family physician. He was called to appellant's home in March, 1943, and found appellant in bed. He examined appellant and came to

the conclusion that appellant was taking the "flu" or a cold and gave him the ordinary treatment for those conditions. He called upon appellant at his home several times thereafter, but appellant did not respond to the treatment, and then Dr. Havens began inquiring about what kind of work appellant had been doing as he (Dr. Havens) had arrived at the conclusion that appellant was not suffering from the "flu." Upon being informed that appellant worked at Delco Remy in a room full of dust all the time, the witness testified, "I come to the conclusion that breathing that dust in his lungs had impaired his condition; *that's going pretty far to do those things.*" There is no explanation by the witness as to what he meant by "that's going pretty far to do those things." This witness further stated that he did not know of any special name for appellant's disablement which was due to his employment.

On November 17, 1944, the appellant was examined by a Dr. Elmer B. Moser, a physician for appellee, who diagnosed appellant's condition as "chronic bronchitis and larnyngitis.".

Dr. Wishard, appellee's plant physician, testified that he had examined appellant several times and had taken five X-ray pictures of appellant's chest on the following dates: October 9, 1941, at the time he was first employed by Delco Remy Division; June 22, 1943; July 20, 1943; January 19, 1944; and March 27, 1944. The witness testified that the first X-ray film taken October 9, 1941, disclosed the presence of a reasonable amount of fibrosis throughout both lungs, but is essentially negative for disease. The X-ray taken June 22, 1943, shows no material difference when compared with the original film taken October 9, 1941, except that there is an area in the right lung of the seventh rib in about one inch in diameter, which has the general appearance of being an

uninvolved pnuemonia. The witness said that the next film, taken July 20, 1943, is identical with the film taken June 22, 1943, except that the pneumonia area no longer appears. Dr. Wishard further testified that the film taken January 19, 1944, shows no disease and shows no material change from all the previous films. The last film taken by the witness on March 27, 1944, is essentially the same as the preceding ones and was diagnosed by him as being essentially negative so far as damaged tissues was concerned. The witness also said that he had examined the appellant on February 4, 1942, at which time he was employed in the aluminum foundry on casting work; again on October 1, 1942, and later on March 27, 1943, at which time his throat was greatly congested. This witness testified that he saw appellant on April 3, 1943, at which time appellant stated that he was doctoring with Dr. Havens and he was advised by the witness to take more time off from work, which appellant did, returning about April 19, 1943. Witness saw appellant again on May 31, 1943, after he had been off work since May 17, 1943, on account of a recurrent throat infection. His throat was still badly inflamed at that time. On June 22, 1943, appellant's throat was very badly indurated and congested, at which time witness diagnosed appellant's illness as virus pneumonia. On August 17, 1943, appellant reported to the witness, complaining of a congestion in his nose and throat *which was diagnosed by the witness as being due to a chronic condition rather than occupational.* The witness further testified that appellant lost a lot of time off work because "of a chronic infection in his throat, congestive sinuses and alleged chest pains." The witness further testified that appellant left his employment about May 15, 1944, because he claimed to be unable to work, although at the time he had been transferred

to the punch press department of the Delco Remy Plant. Witness said that the various X-ray films do not disclose any evidence of silicosis.

In addition to the above evidence, the record contains a report of a reading on an X-ray film made by Dr. Campbell of the Indiana University Medical Center on September 12, 1944, which finding is to the following effect: "Stereoscopic examination of the chest shows the heart and the aorta to be normal in size, shape and position. There are some calcified tracheo-bronchial lymphnodes on the right which constitute a primary healed tuberculous complex. Both lung fields illuminate equally and show no evidence of interstitial or parenchymal disease. Impression: The chest is considered negative."

In addition to all of the foregoing evidence, the Industrial Board had a right to take into consideration the fact that there is no evidence in the record tending to establish the fact that any other employee of appellee who worked in the same room with appellant ever suffered any ill effects therefrom or contracted an occupational disease by reason of such employment.

In view of the foregoing resume of the testimony, we cannot say that the evidence is without dispute or that the conclusion reached by the full Industrial Board to the effect that appellant did not contract an occupational disease as defined by the statute and as alleged in his amended application was not supported by substantial evidence; nor can we say that the Board was influenced by caprice, prejudice, bias, or any other improper considerations in rendering its award. The burden rested upon appellant to convince the Industrial Board of the truth of the allegations of his application; this he failed to do and the evidence

is not of such conclusive character as to force us to substitute our judgment for that of the Industrial Board upon questions of facts.

The award of the full Industrial Board is therefore affirmed.

BOWEN, J., not participating.

NOTE.—Reported in 63 N. E. (2d) 542.