UNITED STATES STEEL CORPORATION *v.* DOUGLAS ET AL.

[No. 18,623. Filed January 25, 1955.]

213

214

*Stevenson, Conaghan, Velde & Hackbert,* of Chicago, Illinois, *White, Raub, Craig & Forrey,* of Indianapolis, and *Harlan L. Hackbert,* of Chicago, Illinois, and *George C. Forrey III,* of Indianapolis, of counsel for appellant.

*J. M. Ruberto,* of Gary, for appellees.

KELLEY, C. J.—Proceedings before the Industrial Board resulting in an award by the Full Board in favor of appellees and against the employer, the appellant herein. This appeal followed.

At the outset, we are required to consider appellees' motion to dismiss the appeal which motion is predicated upon the ground that appellant failed to file its written praecipe with the Secretary of the Board within fifteen (15) days from the date of the award, as provided for in Rule 26 of the Board. There is no contention that such praecipe was filed by appellant within said period of time. However, the transcript was duly filed in the Clerk's office within the statutory time.

Appellees' contention is that under Rule 2-3 of the Supreme and Appellate Court rules, an appeal is initiated by the filing of a praecipe designating what is to be embraced in the transcript and, since appellant did not file its praecipe with the Secretary of the Board within the time specified in said Rule 26 of the Board, this court is without jurisdiction to hear this appeal.

The portion of said Rule 26, pertinent here, reads:

"Appearance—Exception—Appeal.

"26. . . . . Any party desiring to appeal from an award of the Industrial Board must file with the Secretary of the Board within fifteen days from the date' of such award, a written praecipe designating specifically the pleadings and order book entries to be incorporated into the transcript for such appeal."

Rule 25 of the Board provides for the furnishing by the Board of certified copies of the files, orders, awards, records, and transcripts of the evidence, on the written order of the party desiring the same.

There are two provisions of the statute concerning the authority of the Board to make rules. By §55 of Acts 1929, ch. 172, being §40-1506, Burns' 1952 Replacement, it is provided that the Board "may make rules *not inconsistent* with" the act for *"carrying out the provisions hereof."* And §2 of Acts 1943, ch. 138, being §40-2108, Burns' 1952 Replacement,

amending §8 of Acts 1937, provides that the Board is *"authorized* to adopt such rules *as may be necessary to carry into effect* the provisions" of the Workmen's Compensation Act and to prescribe the "means, methods and practices *necessary to effectuate"* such provisions.

Acts 1929, ch. 172, §61, being §40-1512, Burns' 1952 Replacement, provides that an appeal from the award of the full board may be taken to the Appellate Court "within thirty (30) days from the date of such award."

It seems apparent that the statutory authorization given to the Board to adopt rules has for its purpose the enabling of the Board to provide by needed or necessary rules for the prompt and efficient handling and carrying out of its functions and duties in the administration of the provisions of the Workmen's Compensation Act, including the hearing, determination, and review by the full board of all claims for compensation under said act and the Workmen's Occupational Disease Act.

An appellate review of the award of the full board is not an appeal in fact but is in the nature of an independent action available as a matter of right to the proper party notwithstanding the statute may not so provide. *Russell et al.* v. *Johnson et al.* (1943), 220 Ind. 649, 656, 46 N. E. 2d 219. A duly certified transcript of the proceedings, including the evidence, and a proper showing that the record is full and complete are sufficient for review by the appellate tribunal. *Russell et al.* v. *Johnson et al., supra.*

Said Rule 26 of the Board would be of dubious validity if a proceeding for review of the Board's award be held an appeal as in ordinary civil actions. *Russell et al.* v. *Johnson et al., supra.*

In ordinary civil actions the appeal is initiated by the filing in the office of the Clerk of a praecipe, as

provided in Rule 2-3, but no restrictions are placed upon the time within which the transcript must be requested. *Russell et al.* v. *Johnson et al., supra.* Since the party seeking the appeal is held to a standard of due diligence in the filing of the praecipe to the end that the clerk may have a reasonable time in which to prepare the transcript for filing within the time allowed, his failure to exercise due diligence in the filing of the praecipe may result in a denial of extension of time for filing of the transcript. Flanagan, Wiltrout & Hamilton, §2201, comment 7.

Having in mind that law-making power cannot be delegated to the Board, *Financial Aid Corporation* v. *Wallace, Director of the Department of Financial Institutions et al.* (1939), 216 Ind. 114, 120, 23 N. E. 2d 472, that it cannot enlarge its jurisdiction by a rule, *Hoffman* v. *Brooks Construction Company* (1942), 220 Ind. 150, 156, 41 N. E. 2d 613, 143 A. L. R. 1256, and that rules of the Board should be construed as being harmonious with law, if reasonably possible, *Hopper* v. *Sinclair Refining Company* (1933), 98 Ind. App. 384, 385, 187 N. E. 695, said Rule 26 of the Board becomes harmonious with the law if it be construed as providing a time which the Board considers reasonable for enabling the Secretary of the Board to prepare a properly certified transcript of the proceedings, including the evidence, for use in the appeal.

Under such construction of said Rule 26, a party who desires to have an award reviewed but files his praecipe after the time specified in the rule and thereby affords the Secretary of the Board insufficient time to prepare the necessary transcript and record for filing within the allowable statutory time, may be held by the appellate tribunal as having failed to exercise due diligence,

and a denial of extension of time for the filing of the transcript may result. In different words, upon petition for extension of time for filing the transcript, a compliance with the requirements of said Rule 26 may be considered by the reviewing court as some evidence of due diligence, whereas a failure to comply therewith could be considered, under all the circumstances, and within its discretion, as lack of due diligence.

We must assume that under either of said Rules 25 or 26 the Board would prepare and furnish all or any part of the requested certified transcript, including the evidence, if a written praecipe or order therefor is filed with it, regardless of the time such written praecipe or order is filed. The time of the filing of the written praecipe or order is the concern of the requesting party, for it is he who may be penalized if, because of his delay, the transcript cannot be timely prepared for filing.

We hold that compliance with the time limitation provided in said Rule 26 of the Board is not a jurisdictional requirement in a proceeding to review an award of the full board and that, consequently, we have jurisdiction to entertain this appeal.

Proceeding to the merits of this appeal, it appears that pursuant to proceedings upon appellees' application, the Full Industrial Board of Indiana found that appellees' decedent, while in the employ of appellant, sustained personal injuries by reason of an accident arising out of and in the course of his employment which resulted in his death; that his death was due to aggravation of a previous heart condition caused by exertion in the performance of his duties as such employee, causing his death by heart failure. Other essential findings were made, including the dependency of

appellees upon the decedent. An award favorable to appellees was accordingly entered.

Appellant assigns that the award is contrary to law and contends that the evidence "fails to show that Douglas sustained an 'accident' within the meaning of the law."

The record discloses the following pertinent evidence most favorable to appellees:

On February 2, 1953, the decedent, a man 57 years of age, about five feet, six inches in height, and weighing 130 or 135 pounds, was in the employ of appellant as a scrap shear man. He had been an employee of appellant continuously for some twenty-eight years, although not engaged in the same type of work during all of said time. His work consisted of pulling and sliding tin sheets each about 38½ inches in width and weighing about 32 pounds before being cut, from a circular shear machine to a scrap cutting machine some four feet distant from the circular shear machine. After the cutting the sheet weighed about 15 pounds.

Two helpers would take the tin sheet from a conveyor, place it in position for the circular cut, and, after the circle was cut out, the decedent would tilt or lift the back corner of the scrap about 5 inches up and over what is known as the "hold-down" and push or slide the sheet across to the scrap cutting machine.

The circular cutting machine made a cut about every 15 seconds. This required decedent to walk back and forth between the two machines at the rate of about 32 feet per minute, 1,930 feet per hour. During the working hours the machines were practically in continuous operation and decedent in continuous motion. There were no rest periods except for lunch.

On the day of his death, decedent went to work on the twelve to eight morning shift. He worked continu-

ously from twelve o'clock midnight until four o'clock A.M., when he stopped for a thirty-minute lunch period. He returned to his work at about 4:30 and worked until about 5:20 or 5:30, at which time he suddenly fell backwards onto a pile of scrap metal and died within 5 to 10 minutes thereafter.

The cause of death, according to the testimony of the deputy coroner who performed an autopsy on decedent, was "coronary occlusion, which is the medical term for the blockage of the coronary artery." He further testified that the coronary artery disease was of relatively long-standing and that the blockage and occlusion was fresh and had happened within minutes of decedent's death; that the coronary vessels transverse and nourish the heart muscles and that such vessels were visibly sclerotic; that he found plaques, which are "fixed, hard, waxy material"; that the plaques tightly adhere to the blood vessels and "they will break off and create a foreign body in the blood stream"; that with the hardening of the arteries, the vessels get smaller and smaller; that the "tube" itself gets hard and the plaques occur along the hardening of the arteries; that in coronary occlusion you sometimes have coronary insufficiency where the exertion of the individual is so great that the blood cannot be pumped to the heart and as a result the heart fails, and that in decedent's case there was a 100% insufficiency. The deputy coroner was asked whether "others of these plaques" were "loose in the coronary artery" and he answered that "we just looked for the one cause. You assume there were others in there, sir, but we didn't check to see how right," and he answered affirmatively to the question: "When you found the one that formed the occlusion, you stopped, that being a sign or characteristic of the condition?"

There was evidence that for about 6 or 7 months prior to his death, decedent had complained of being sick and that he couldn't sleep. There is no direct evidence that he had consulted a physician with reference to his condition, but one witness, a fellow worker, stated that decedent told him that he went to a doctor and the doctor seemed to think he had heart trouble. His widow testified that decedent did not go to a doctor, but she also stated that decedent had said that certain "pills" were prescribed for him by a doctor. One witness said he was at decedent's home the day before the latter's death and decedent told him "it looked like he couldn't get enough sleep," but that decedent didn't say he was "sick or anything"; that after the lunch he noticed decedent walking to and fro and "swaying like he was getting dizzy." Another witness testified that at the time he came to work on the morning of decedent's death, the latter complained of not feeling well; that he again so complained during the lunch hour; that at the lunch time he "dozed off" with a sandwich in his mouth, and the witness "woke him up and gave him his coffee"; and that he noticed some difference in decedent's movement, "walking like was staggering or off balance."

With reference to the energetic requirements and physical effect of decedent's work, we quote the following excerpts from appellant's condensed recital of the evidence of decedent's two fellow workers: "I would say the job of that kind was strenuous"; "His job was tiring"; "This job required the use of his arms and hands, pulling and pushing scrap. If you do that for some time you get tired. The job required you to be 8 hours on your feet, moving back and forth except when you have lunch"; "The job was strenuous and tiring for all three of us"; "He (decedent) was on the

go all the time"; "It is a pretty tiresome job"; "I would say that job required continuous movement, and if strenuous means that, the job was strenuous."

In addition to the deputy coroner, medical testimony was given by two physicians on behalf of appellees. Both physicians testified in response to the same hypothetical question put by appellees. Again utilizing appellant's condensed recital of the evidence, we quote from statements of the first medical witness: "I would say the physical work done by the decedent aggravated his heart condition and precipitated his death." "I would say the work done by the decedent was over-exertion for his particular heart." "The coronary attack of a person who has a coronary condition such as disclosed in the hypothetical question could be brought on by fast and continuous work." "I think the work he was doing, going back and forth, lifting, pulling and pushing scrap for practically 5 hours probably hastened his death because of exertion." "Those plaques may not be from where the blood clot forms. The most common thing is that the plaque breaks loose, that is what we usually find." "Most always a coronary is very sudden."

The second medical witness testified: "My opinion would be that this man's death was aggravated and precipitated by his work." "This exertion at this particular time constituted an over-exertion for Mr. Douglas and caused or hastened his death." "My opinion is this man had been working 4 or 5 hours, that would be a contributing factor to his death." "Assuming the work activity remained level, what happened here was that the heart vessel failed, becoming blocked, reached a point which I characterize as over-exertion at the particular time."

Appellant offered no evidence other than two photo-

graphs of the machines. Said evidence, therefore, stands undisputed.

As we understand appellant's position, its whole contention, stated in varying form, is this: Admitting that the medical testimony establishes that decedent's regular work was over-exertion for a heart in such diseased condition as decedent's and thus said work was a contributing factor to his death, the evidence fails to show that decedent's death resulted from an "accident" within the meaning of the compensation law. To sustain its said contention appellant, in its argument, asserts and discusses these grounds: (a) There was no external violence, such as a blow, strain, or unusual or sudden activity; (b) There was no internal lesion in the physical structure of the body, such as a rupture, herniation, or collapse of an organ, blood vessel, or muscle; (c) There was no relatively severe or definite physical strain or exertion, only the continued regular, steady, and even doing of the work by decedent as he had always done theretofore; (d) There was nothing unexpected about the progression and ultimate end of decedent's degenerative heart condition, for the reasonably-to-be-expected end result of his existing coronary sclerosis was the coronary occlusion which shut off the blood supply to his heart; and (e) That the medical witnesses gave their opinion that decedent's work was a "contributing factor" to his death *only* because rest was the indicated treatment for decedent's pre-existing heart condition.

Appellant's said supporting grounds (a) and (b) are in fact predicated upon appellant's stated proposal that "death from degenerative heart disease is 'death by accident' *only* if such death results from a. external violence, or b. herniation or rupture of the heart or blood vessels, during or following a period of increased

strain or exertion." A study of the cases cited by appellant in support of division a. of said proposal fails to disclose such holding. In none of the cited cases did the reviewing court or the Industrial Board consider or hold that external violence was a prerequisite to a finding or conclusion of death by accident. An exhaustive review of the cases in our state touching on the question of "death by accident," as that term is used in the Workmen's Compensation Act, leads us to no case which does so hold. On the contrary, in *Terre Haute Malleable and Manufacturing Company* v. *Wehrle* (1921), 76 Ind. App. 656, 658, 132 N. E. 698, it is said: "For this class of cases, the idea of an external accident is thereby eliminated." Small, in his work on the Workmen's Compensation Law of Indiana, §5.3, p. 100, gives this expression: "Through the liberal construction placed upon the terms accident and injury, courts have been able to appraise a harm and its relation to the employment without having to microscopically find, or give semblance of finding some *external* accident invading from a point outside the workman himself." (Our emphasis.)

Our courts have many times defined and adopted the meaning to be attributed to the word "accident" as used in the Compensation Act, see *Haskell, etc., Car Co.* v *Brown* (1918), 67 Ind. App. 178, 117 N. E. 555, and it is deemed neither advisable nor beneficial to now alter, change, or add to such definition. Elsewhere it has been definitely held that an injury, to be accidental, need not be created by wound or external violence. *J. Norman Geipe, Inc.* v. *Collett* (1937), 172 Md. 165, 190 A. 836, 109 A. L. R. 887; *Town of Cicero et al.* v. *Industrial Commission et al.* (1949), 404 Ill. 487, 89 N. E. 2d 354.

Grounds b. and c. of appellant's said proposal, as

stated, require the presence of two requirements as necessary for a finding of "death by accident" in degenerative heart cases. Such requirements are the establishment (1) that the heart or blood vessels were herniated or ruptured, and (2) that such herniation or rupture was occasioned by or resulted from increased strain or exertion. In its argument, appellant states the matter in this way: "Thus in the cases in which compensation has been allowed, we find that two factors are present: (1) herniation or rupture of the heart or arterial vessels, (2) during or immediately following relatively greater physical strain or exertion." In its reply brief appellant says: "there must be either external violence or increased strain or exertion causing a physical lesion of the internal structure of the body in order to constitute an 'injury by accident' which is compensable under the statute." We have heretofore rejected the idea that external violence must be a causative factor.

In *Slaubaugh* v. *Vore* (1953), 123 Ind. App. 497, 110 N. E. 2d 299 (transfer denied), this court rejected a contention similar to that here made by appellant with reference to the necessity for increased strain or exertion. The holding in that case seems decisive of appellant's said contention and we perceive no valid reason to further pursue the matter.

We are not inclined to think that the question of injury or death "by accident" is necessarily dependent upon whether or not there was a herniation, rupture, or physical lesion of the heart, blood vessels, or physical structure of the body. Appellant apparently seeks to lure us to the view that where there is no break or lesion, there is no accident. The real question seemingly advanced by appellant's said proposal is this: Is the break or lesion itself the accident or is the occurrence,

event, or course of events which caused or lead to the break or lesion to be considered as the accident?

In some of the earlier cases, mostly English, there were expressions indicating that the break was regarded as the accident. We quote, in part, from *Indian Creek Coal and Mining Company* v. *Calvert et al.* (1918), 68 Ind. App. 474, 494, 119 N. E. 519, 120 N. E. 709: ". . . in some of the cases reviewed above, the accident is regarded as the physical break or the like in the body resulting from some occurrence or event, or course of events, rather than any such occurrence or event; while the injury is regarded as the physiological consequence of such break or the like rather than the latter. . . ."

That the question has not been without confusion and difficulty, attention is invited to Small's Workmen's Compensation Law, pp. 98, 99 and 100, §§5.1 and 5.2. However, without further extending the scope of this opinion, we observe that the settled definition by our courts of the word "accident" as used in the Compensation Act, is that it means "any unlooked for mishap or untoward event not expected or designed." *Haskell and Barker Car Company* v. *Brown et al.* (1917), 67 Ind. App. 178, 187, 117 N. E. 555, *supra*. The test, therefore, of whether there has been an "accident" within the meaning of the Compensation Law is not whether there has been a break or lesion in the physical structure of the body but whether there has been an "unlooked for mishap or untoward event not expected or designed."

Appellant's remaining proposals seem to call for no individual attention as they, of necessity, will be embraced by the further development of this opinion.

The crux of this whole matter lies in appellant's insistence that decedent's death "was only the antici-

pated, inevitable end result of his progressive heart disease, . . . and . . . merely the culmination of the strain of living, and was not due to any activity of his employment which could be regarded as an 'accident.' " Further narrowing the question, appellant, in effect, says that the doing by the decedent of his usual, normal, steady work did not cause or result in the occlusion suffered by him, but that the diseased coronary artery, as was reasonably to be expected, progressively became less able to remain in functioning position until, by the process of nature, and not by reason of his work, the artery finally closed, with sudden death ensuing.

It occurs to us, however, that appellant fails to heed the established rule that on appeal, in determining the correctness of the finding appealed from, we must accept the evidence most favorable to the appellees. Appellant put in no evidence other than the two photographs of the machines and, as previously stated, the evidence in the record as to all other matters stands undisputed.

It is apparent from the testimony of decedent's fellow workers, from which we have heretofore quoted pertinent excerpts, that his work was strenuous, tiresome, and continuous, and that it required him to be constantly on his feet during the working hours, walking quickly back and forth from one machine to the other, and continuously using his arms and hands in lifting, pulling, and pushing the scrap.

It further appears from the evidence that decedent and his helpers, on the fatal morning, were working on a piece-work basis whereby "the more circles we cut the more money we made," and "This night we were determined to get as much as we could"; that up to the time of decedent's death they had made their quota of 1,100 circles and intended to make 1,800 during the

8-hour shift. It was within the province of the Board to draw the reasonable inference from such facts that the decedent, on that occasion, was, in fact, moving faster and with more sustained continuity than usual.

On the issue of causation, we have already quoted from the medical testimony. There was further medical testimony that heart disease occurs in all walks of life and "people will suffer acute coronary attack and die almost any hour of the day and night"; that work will aggravate a coronary condition; that the inciting factor of blockage of the coronary vessel is brought on most often by physical exertion; that the work done by decedent would be more exertion than "a person with that condition should do"; and that "the work would be the progressing factor"; that it was reasonably expectable that decedent would have a coronary occlusion; that a coronary hits very sudden, not prolonged; and that the prescribed treatment for a heart condition such as decedent had would be principally centered about limitation of activities and rest. The following appears in the transcript: "Q. In this man's case it just happened at the time it broke while he was at work? A. *It broke under the circumstances of his exertion.*" (Our emphasis.)

The medical evidence appearing in the record seems sufficient to show that there was a "physical lesion of the internal structure of the body." The medical term "lesion" is defined in Webster's Unabridged New International Dictionary, Second Edition, as "Any morbid change in the structure of organs or parts; hence, the diseased or injured region." It seems reasonable to conclude that the plaques which broke loose and floated, as a foreign body, in the blood stream, clogging the passage of the blood to the heart, would occasion a

lesion in the arterial vessels. The breaking loose of the plaques which occasioned the "physical lesion" and the occlusion suffered by decedent is traced by the evidence causatively to his physical exertion.

Such physical exertion which contributes to bring about the injury is not required to be unusual, different, or greater than that ordinarily expended by the employee in the course of his employment. *Slaubaugh* v. *Vore* (1953), 123 Ind. App. 497, 110 N. E. 2d 299, *supra*. Nevertheless, as we have previously pointed out, there was competent evidence from which the Board could have inferred that decedent's exertion in the doing of his work on that final morning of his earthly life was, in fact, greater than usual.

We are not in position to say, as urged by appellant in its supporting ground (e), that the medical witnesses' opinion that decedent's work was a "contributing factor" to his death was based *only* on their expressed advice that rest was the indicated treatment for decedent's pre-existing heart condition. They did not say that such was the sole basis for their opinion. Certainly we are not authorized to supply their intendments.

That there was "nothing unexpected about the progression and ultimate end of decedent's degenerative heart condition," as stated in appellant's supporting ground (d), is to no purpose. If, as a matter of fact, the death of the decedent was not brought about by the natural progression of nature's inexorable law of disease deterioration, but, on the contrary, as shown by substantive and competent evidence of probative value, was accelerated and hastened to sudden and untimely conclusion through aggravation of decedent's existing and pre-existing disease as a proximate result of industrial accident (in this case

the impact of the work-exertion on the decedent), the fact that in the opinion of medical men the decedent would ultimately have died from the ravages of the disease does not, for that reason, render the fatal injury non-compensable.

In *Indian Creek Coal and Mining Company* v. *Calvert et al.* (1918), 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709, the court considered a number of English cases and said that since the language of our act (Compensation Act) was taken literally, if remotely, from the English act, the decisions of the English courts construing the language in the English act are very persuasive of what construction should be placed on the language as found in our act. There are expressions in some of the cited English cases which are apropos at this point. We refer to one from the cited case of *Clover, etc. Co.* v. *Hughes* (1910), L. R. A. C. 242, 3 B. W. C. C. 275; wherein Lord Macnaghten said: "The fact that the man's condition pre-disposed him to such an accident seems to me to be immaterial. . . . The fact that the result would have been expected, or indeed contemplated as a certainty, by a medical man of ordinary skill if he had diagnosed the case, is, I think, nothing to the purpose. An occurrence, I think, is unexpected, if it is not expected by the man who suffers by it.

The court in the said Calvert case gives its own expression in these words: "But assuming that decedent was afflicted with a fatal malady certain to result in his disease sooner or later, and that such malady was a cause of decedent's death here, these facts alone are not sufficient to defeat appellees' claim. Such result would follow only in case his disease was in fact the result of his ailment progressing naturally and disassociated from any injury that he may have suffered

by accident arising out of and in the course of his employment. *If there was such an injury, and it concurred with the ailment in hastening the latter to a fatal termination, then the right to an award exists.*" (Our emphasis.) Small, in his Workmen's Compensation Law of Indiana, §5.4, p. 108, puts it this way: "*Only where it is clear* that the existing disease or condition *alone* was the moving cause of the disability or death has the bar been drawn and compensation denied." (Our emphasis.)

And again, in *The Studebaker Corporation v. Jones* (1937), 104 Ind. App. 270, 275, 10 N. E. 2d 747, this court said: "The mere fact that the physical condition of an employee might make him more susceptible to the particular injury which resulted in his disability is no reason for holding that a disease or condition, rather than the accident, was the proximate cause of the injury upon which the allowance for disability is based, nor is it essential to determine the amount and extent of the strain, effort, or exertion necessary to be expended as a legal cause for a compensable injury."

Appellant's main contention in this case would, perhaps, seem logical and influential if there appeared no evidence proximately connecting the exertion of decedent's work causatively with the occlusion which caused his death. But there is evidence that such exertion not only "concurred with the ailment in hastening the latter to a fatal termination," but that it *aggravated the heart condition,* contributed to, precipitated, and *caused* decedent's death. If a piece of the sheet metal which decedent was handling had slipped or fallen or had been otherwise forcibly pushed against decedent's breast, and the occlusion had thereupon occurred with fatal result, it would, no doubt, under our holdings, have been considered an untoward, un-

foreseen, and unexpected event definable as an accident intervening in the natural progress of the afflicting disease and proximately causing the fatal injury. In such case there would have been something tangible, something visible, something material which could easily have been described and vividly impressed upon the mental faculties.

Wherein, in effect, lies the distinction between the blow of the metal sheet, in the one case, and the rapid, continuous exertion evident in the instant case? Each, under the given circumstances, would have produced the same result. But the tiring, depreciating, and exciting effect of the hurrying effort, with its instant and constant demand upon the mental faculty and the nervous system of the human body, is something that cannot be seen, cannot be felt by the observer, and is of ethereal quality. Thus, for such reason, it apparently becomes more difficult to define its deadly effect on the corrupted heart as an accident.

Every requirement found by our courts to be necessary to constitute an accident are here present. In so far as revealed by the evidence, neither the decedent ▄ nor anyone else knew that he was afflicted with a fatal infirmity. Therefore, from the record before us and the evidence we have delineated, it is apparent without gainsay that the mishap and untoward occurrence, which befell the decedent was not foreseen, expected or designed by him. It was most surely an accident unless we are prepared to say that that which cannot be seen or felt or observed in action and influence cannot be such. We are not so prepared. We do not mean or intend to imply, by the language we have used, that if decedent had known of his true infirmity there could not have been, under these facts, a determination that there was an accident. Each

case is individual unto itself, upon its particular facts, and whether there has been an accident under those facts is for the Board to find.

The evidence discloses a causal and proximate relation between decedent's fatal injury and his employment and further establishes that decedent's existing disease was hastened to its final culmination by the exertion occasioned in the course of his employment.

The question as to whether or not the death of the decedent was the result of an accident arising out of his employment was a question of fact for the Industrial Board. *Miller et al.* v. *Beil et al.* (1921), 75 Ind. App. 13, 15, 129 N. E. 493, and its finding thereon, where, supported by some evidence, will not be disturbed on appeal; *Self* v. *Shirkie Coal Company* (1929), 89 Ind. App. 673, 676, 166 N. E. 613. The evidence in this cause is adequate to support the award in all respects. We find nothing which would warrant us in concluding that the award is contrary to law.

Comparatively recent cases from other jurisdictions may be of interest. We cite: *Associated Indem. Corp.* v. *Industrial Accident Commission et al.* (1953), 261 P. 2d 25 (District Court of Appeal, Third District, California), quoting from *Liberty Mut. Ins. Co.* v. *Industrial Accident Commission* (1946), 73 Cal. App. 2d 555, 166 P. 2d 908, 911; *Jones et al.* v. *California Packing Corp. et al.* (1952), 244 P. 2d 640 (Supreme Court of Utah) ; and *Merritt* v. *Department of Labor & Industries of State et al.* (1952), 251 P. 2d 158 (Supreme Court of Washington).

Award affirmed.

Pfaff, J., not participating.

Royse, P. J., concurs in result, with opinion.

CONCURRING IN RESULT

ROYSE, P. J.—I cannot agree with the reasoning or

conclusion as to Rule 26 of the Industrial Board. In my opinion, the authorities cited in this opinion not only do not sustain the conclusion, but compel the opposite conclusion. The case of *Russell et al.* v. *Johnson et al.* (1943), 220 Ind. 649, 46 N. E. 2d 219, cited in the majority opinion, quotes the exact rule before us in this case and upholds that rule as valid.

The reference to §2201, Comment 7, of Flanagan, Wiltrout and Hamilton refers to appeals in civil actions. It is to be noted that the last paragraph in said Comment provides as follows:

> "An award of the full Industrial Board may be reviewed by the Appellate Court. The statute provides for a period of thirty days from the date of such award. . . . However, the Board, *in the exercise of its rule-making power, has provided that a praecipe must be filed within fifteen days.*"

The sole authority for the rule-making power of the Industrial Board is provided for in Ch. 120, Acts 1945, §§1-11, 60-1501—11, Burns' 1951 Repl. In my opinion the rule announced in the Johnson case, *supra,* is binding on this court and it seems to me that Rule 26 merely gives effect to the legislative intent that proceedings before the Industrial Board shall be promptly and expeditiously brought to a final decision. I believe the appeal should be dismissed.

If we had authority to consider this case on its merits I would agree with the conclusion of the majority.

NOTE.—Reported in 123 N. E. 2d 899.