SOLLITT CONSTRUCTION CO. INC. *v.* WALKER ET AL.

[No. 18,799. Filed June 26, 1956. Rehearing denied November 15, 1956. Transfer denied February 14, 1957.]

*Jones, Obenchain & Butler* and *Roland Obenchain,* of South Bend, for appellant.

*J. Chester Allen,* and *Allen & Allen,* of South Bend, for appellees.

BOWEN, J.—This is a proceeding by the appellant for a judicial review of an award of the Full Industrial Board in favor of the appellees, the surviving widow and minor dependents of Spearman DeWitt Walker rendered upon the application of such appellees for workmen's compensation by reason of decedent's death which allegedly occurred as the result of an accident arising out of and in the course of his employment by the appellant. To appellees' application for compensation the appellant filed an answer in admission and denial, which, as far as this appeal is concerned, presented a controversy whether decedent died as a proximate result of personal injuries received by him on the day in question by reason of an accident arising out of and in the course of his employment.

The single member of the Industrial Board at the original hearing found against the appellees; the appellees thereafter filed their application for review by the Full Industrial Board which entered a finding and award against the appellant, in which such finding and award, the single member who had previously found against the appellees did not concur.

Sole error assigned is that the award of the Full Industrial Board is contrary to law.

Considering the evidence most favorable to appellees which we are required to do, from the record, it appears that the decedent was fifty-eight years of age, six feet two inches tall and weighed 210 pounds. That he had worked as a construction laborer for approximately eleven years. Decedent had been suffering from heart disease for several years prior to his death. During this time he had been under the care of a physician and received treatments for this heart disease from one to three times a week up until the latter part of January preceding his death. His physician last saw him some two days before his death at which he had a chronic cough and an enlarged heart. Another physician who had treated him in his lifetime for a number of years for a hypertensive cardiovascular condition testified that he had a history of blood pressure of systolic reading of 250, and with a diastolic of 100 to 150. The autopsy following his death, showed that the weight of his heart was double that of a normal heart, and there was scarring of the heart musculature and thickening of the aorta and coronary arteries, and congestion of the lungs. It must be assumed from the evidence that the decedent had a badly diseased chronic heart condition at the time of his death.

While there were some minor conflicts, the evidence most favorable to appellee shows that on the morning in question the decedent was working as a construction

laborer in the construction of the Bendix Aviation Plant in South Bend. He was helping in the wrecking of wooden forms which had to be removed after concrete has been poured and sets. Such wooden forms had contained a concrete wall which was from 15 to 20 feet high. There was a mound of dirt about 6 feet long, eight feet wide, and four feet high some two feet from this wall. The decedent was standing at the foot of this mound of dirt when a fellow laborer loosened one of the boards from the wall, the top part became loose and this board which was a two by six from 15 to 18 feet long, weighing 25 to 30 pounds, fell, the bottom part striking the mound of dirt, and then this board sprang back against the wall, and then back again coming down the four-foot incline and struck the decedent on the left side of the head. When the plank broke loose a fellow workman yelled to the decedent to look out. The decedent at the moment was stooping over picking up some small clamps, and in straightening up in response to the look out warning rose up into the path of the falling board. When the board struck decedent he pulled his cap off of his head and started rubbing his head. Some ten to fifteen minutes later he started staggering and stumbling around and talking incoherently, and when a fellow employee asked him what was wrong after he had said "who-eee", he said "Oh, I'll make it." The decedent remained on the job after he was struck by the board for some thirty minutes, and until the foreman came around and asked other workmen what was the matter, and one of them told the foreman that the decedent got hit by a two by six, and the foreman told the other men to get him out and take him to a doctor. The decedent was then helped out of the low place in which he had been working and placed in an automobile. Enroute to the doctor's office, in the automobile, the decedent urinated and bled at the mouth, and was unresponsive to

questions. The decedent was transferred to an ambulance on arriving outside of the doctor's office, and he died enroute to the hospital.

The medical testimony supporting the appellees' claims comes mainly from the testimony of Dr. Butts, who testified that he had treated the decedent for heart trouble during his lifetime, and that he had an enlarged heart. That he was present when the autopsy was performed on decedent's body after his death. His testimony referring to the striking on the head by the falling board in answer to a hypothetical question setting forth the facts and circumstances of the record in substance was as follows:

"Q  Would you have an opinion as to whether there was any causal connection between the blow on the head and the death of that man, Spearman Walker?

"A  I do.

"Q  Well, what was that opinion, Doctor?

"A  Well, my opinion would be tied in largely with the autopsy. From the autopsy we established two facts. The man had an enlarged heart, he had pulmonary edema, which tells us he had a heart that was failing too. That gives us the pulmonary edema and enlargement of the heart. Then too in the autopsy report you noted he had fibrosis or scar tissue throughout the heart wall itself. That is due to coronary insufficiency. Under those conditions anything such as fright, physical—or exertion or excitement can precipitate failure in such a heart from the very fact that the relationship of time between the incident and the death I would certainly think in my way of thinking that there was a connection between this blow and the man's death."

"A  Well, when a heart such as Mr. Walker had was already enlarged the oxygen demand for that heart was great because of the tremendous enlargement. Now, under conditions such as fright, excitement or anything of an emotional

nature the demand—the oxygen demand for the heart is automatically stepped up and if you have a coronary system which is already deficient, the coronary system can't take care of the extra demand on the heart system. A man can have one attack which may be fatal or he can have several such attacks.

"Q So that it's your opinion that this—either the blow or the excitement aggravated this condition, that right?

"A That's right.

"Q And, thereby hastened and caused the death?

"A Affirmative nod.

"Q And, Dr. Butts, was that the situation against which you were cautioning him over the months that you treated him?

"A That's right, because a laboring man cannot stand that extra load on the heart because the heart was failing, it just can't take it.

"Q And, from what you say it's borne out by the autopsy report itself?

"A By the autopsy report."

On cross-examination Dr. Butts testified as follows:

"Q Now, would it make any difference in your opinion whether the contact of the plank with Mr. Walker's head was a mere glancing blow which caused no contusion, no abrasion, no swelling, no discoloration, and one that did?

"A Well, in answering your question, I'll put it this way. So far as the blow itself is concerned I think it had no connection but it was the excitement was the thing precipitated—

"Q . . . Then you in your opinion, whatever, however little or however severe the contact of the plank with the head may have been, that itself had no bearing on the final termination.

"A No.

"Q Now, are you assuming that there was any excitement?

"A There had to be excitement.

"Q How do you mean, "there had to be"?

"A  I mean, of course, I wasn't there, the only thing
I can do—
"Q  (Interposing) You're taking what Mr. Allen
asked you to assume?
"A  No, I'm taking from the history of the wit-
ness."

The finding of the Full Board as to the material ques-
tion at issue in this appeal is as follows: "that on said
date he sustained personal injuries by reason of an acci-
dent arising out of and in the course of his employment
with the said defendants; that the said accidental injury
consisted of shock and excitement caused by his said
employment with the said defendant which aggravated
and precipitated a previously existing heart ailment
which resulted in his death on the said date".

The record herein presents a situation by reason of
the evidence and the Board's finding which is of first
impression as to the particular facts involved in the
causal relationship of the alleged accident and the dece-
dent's death, in the jurisprudence of our own state.

The courts of this state are committed to the doctrine
in interpreting the Workmen's Compensation Act, that
where an employee is suffering from a pre-exist-
ing disease and suffers an accident in the course
of his employment, the proximate result of which
is to materially aggravate or accelerate such existing
disease, compensation may be awarded for the ultimate
death, where the accident concurs with the ailment in
hastening a disease to a fatal termination and where
such fatality would not have occurred but for such in-
jury. *Haskell & Barker Car Co.* v. *Brown* (1918), 67
Ind. App. 178, 117 N. E. 555; *Indian Creek Coal etc.
Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519;
*U. S. Steel Corporation* v. *Douglas* (1954), 125 Ind.
App. 212, 123 N. E. 2d 889; *E. Rauh & Sons Fertilizer
Co.* v. *Adkins* (1955), 126 Ind. App. 251, 129 N. E. 2d

358; *Burton-Shields Co.* v. *Steele* (1949), 119 Ind. App. 216, 85 N. E. 2d 263; Small's Workmen's Compensation Law, Sec. 5.4, p. 108, Sec. 6.20, p. 151.

In *Mansfield Engineering Co.* v. *Winkle* (1921), 77 Ind. App. 237, 133 N. E. 390, an employee was struck on the forehead with an air hammer which he was using about 9:30 A.M. Immediately after receiving the blow he threw his hands over his face and walked around for a few minutes and returned to his work. The blow was of sufficient force to produce discoloration and the skin was broken beneath the eyebrows. He left work at noon and complained his head was hurting and he was "awfully sick". He got home about 1:30 P.M. and died about a half hour later. The autopsy showed no apparent injury to the skull or brain, and heart tissue had degenerated until it was as thin as paper. The direct and immediate cause of death was the rupture of the heart. This court approved an award of compensation upon medical testimony that in the opinion of such doctors the rupture of the heart which caused death was a result of the shock produced by the blow on the head.

While the foregoing case is the only case which is in some respects similar to the facts of the instant case, there was no evidence of traumatic injury in the form of visible wounds or contusions or internal injuries, as a result of the striking of decedent's head by the falling board.

The Board's finding recites that the accidental injury consisted of shock and excitement caused by his employment which aggravated and precipitated a previously existing heart ailment which resulted in his death.

Dr. Butts testified that there was a causal connection between the blow on the head and the decedent's death. A reasonable inference which the Board could have drawn from Dr. Butts' testimony in both direct and cross examination was that the blow on the head pro-

duced the excitement which the Board found aggravated and precipitated his previously existing heart ailment resulting in his death. And the finding of the Board "that such excitement *was caused by his employment*" was an ultimate fact sufficient to establish the causal relationship between the accidental injury and the death of the decedent.

The courts have adopted a rule that the term "injury" as used in the Workmen's Compensation Act is broader than mere reference to some objective physical break or wound to the body, but includes also the consequences therefrom, including mental ailments or nervous conditions. *Burton-Shields Co.* v. *Steele, supra; Jackson Hill Coal & Coke Co.* v. *Slover* (1936), 102 Ind. App. 145, 199 N. E. 417.

In *Greenwell* v. *Lincoln Bakery* (1954), 124 Ind. App. 462, 119 N. E. 2d 29, cited by the appellant, this was the case of an employee who died from a ruptured cerebral aneursym and the Board denied compensation. There was medical testimony that the blow on the head could not have caused the rupture, nor were there any witnesses who saw decedent bump his head.

In the cases of *Pollock* v. *Studebaker Corp.* (1952), 230 Ind. 622, 105 N. E. 2d 513; *Prudential Insurance Co.* v. *Van Wey* (1945), 223 Ind. 198, 59 N. E. 2d 721, relied on by appellant, the cause of the falls following which disability and death occurred were wholly unattributable to any particular cause.

One of appellant's main contentions appears to be grounded upon the claim that since the Board's finding did not mention the evidentiary facts of the striking of the decedent's head by the falling board and confined itself to the ultimate fact conclusion that "the accidental injury consisted of excitement caused by his employment" that there is no sufficient finding of accidental injury. The Board is not required to

set up each separate and specific evidentiary fact so long as there is a finding of ultimate fact which is sufficient under the law and which is supported by substantial evidence of probative value. The concurrence of the falling board striking the decedent and the resulting excitement precipitating his death from the heart ailment stands out clearly in a fair appraisal of all of Dr. Butts' testimony and the Board having found the ultimate fact of death occurring as the result of such excitement caused by employment which aggravated and precipitated a previously existing heart ailment resulting in his death was sufficient to sustain the award.

The evidence in this record before us considered in the light of the Board's finding is sufficient to have established a proximate causal relationship between the unlooked for mishap and untoward event, not expected or designed, to-wit: the striking of the decedent by the falling board and the concurring consequent excitement which aggravated his pre-existing heart disease thereby causing his death. Nor, do facts appear in this record from which this court could conclude as a matter of law, that the pre-existing heart disease alone was the cause of his death, or that the cause of his death was a matter entirely of speculation and conjecture.

Appellant asserts further error in that due process was denied by the hearing members' rejection of the single member's determination of the weight and credibility of the evidence when he denied compensation at the original hearing. And, that the action of the four "non-seeing" members in reversing the action of the original hearing member on the "cold record" was arbitrary, oppressive and contrary to the fundamental principle that parties are ordinarily entitled not only to confront the witness but to have the trier of the facts hear and see the witnesses. Counsel cites many cases involving civil procedure generally.

However, in this connection, while it must be admitted that our present method for the determination of cases by the Full Industrial Board in the manner set forth in our statutes providing for Workmen's Compensation, leaves much to be desired, and as a practical matter there is much merit to appellant's contentions, nevertheless, in view of the decision of the Supreme Court of Indiana in *Warren* v. *Indiana Telephone Co.* (1939), 217 Ind. 93, 26 N. E. 2d 399, the court pointed out that "the rights and duties provided for in the Compensation Act are contractual in character, that is to say, they arise out of the voluntary acceptance of the terms thereof on the part of the employer and the employee" . . . , "and having elected to be bound by the act, a party is in no position to complain that his right to a jury trial is no longer available to him". The same reasoning would apply by analogy to the contentions raised by the appellant in this case as to the action of the four non-seeing members reversing the action of the single member in the instant case as constituting a denial of due process. In the instant case the parties by their contract and voluntary acceptance of the terms of the act which by its terms gives the Full Board discretionary power to review the evidence in the manner as done in the instant case, are in no position to complain. *Warren* v. *Indiana Telephone Co., supra; Bimel Spoke, etc. Co.* v. *Loper* (1917), 65 Ind. App. 479, 117 N. E. 527.

For the reasons given herein, the award of the Full Industrial Board was not contrary to law, and there is sufficient evidence of probative value to sustain such award. The award of the Full Board is therefore affirmed.

Pfaff, J., not participating.

NOTE.—Reported in 135 N. E. 2d 623.