DOUGLAS ET AL. *v.* WARNER GEAR DIVISION OF BORG WARNER CORPORATION.

[No. 19,496. Filed May 12, 1961.]

*Archie Lapin* and *Dick Clapp*, both of Muncie, for appellants.

*Murray, Mannon, Fairchild & Stewart* and *Richard W. Guthrie,* both of Indianapolis, for appellee.

KELLEY, J.—Appellants' decedent, while in the employ of appellee, suffered a heart attack and died. Appellants, as alleged dependents of said decedent, sought recovery against appellee under the provisions of the Workmen's Compensation Act on the ground that decedent's demise was the proximate result of personal injuries sustained by him by reason of an accident arising out of and in the course of his employment by appellee. The Full Board found that on January 5, 1959 decedent suffered a cardiac attack which resulted in his death; that said decedent did not sustain an accidental injury arising out of and in the course of his employment by appellee; and that said cardiac attack was not caused by or related to decedent's said employment. Further finding and award was against appellants on their application.

Appellants' application, Form 10, is not set forth in their brief. They say, however, that it described the accident and cause of injury as: "the overexertion and strain from duties requiring among others the tipping of heavy containers used for scrap and sweepings in a department where ventilation was poor and air polluted." They further say that the nature of the injury is alleged to be: "exertion and strain occasioned in the course of his duties as a sweeper, requiring sweeping, moving about, tipping of heavy containers for sweepings and scrap, resulting in a myocardial infarction, coronary occlusion."

That portion of appellants' brief devoted to "Argument" covers pages 35 to 64, inclusive. Of those pages, pages 35 to the middle of page 61 are devoted to a discussion of the holdings of three Indiana cases. All this is under the stated proposition, in substance, that: "The Law is that the Award must be sustained by substantial evidence." The only reference in the "Argument" to the evidence in the cause is contained in one paragraph on pages 61 and 62 of the brief which we quote in haec verba:

> "But the case of your appellant is made even stronger by uncontradicted testimony that January 5, 1959, was the day 'after inventory' and decedent's work on that day was 'unusual.' Appellee put into evidence the testimony of only one witness who observed decedent working on that fatal day. Certainly, the evidence of that one witness would be most favorable to the appellee and could be considered by the court. But that witness definitely states that there was about the 'usual amount' of shot for a Monday morning, but that there was more 'paper and refuse' than usual, more than 'normal' to be swept up that day—'There was more refuse and paper on the floor than normal, they would throw inventory tickets on the floor when they got throught with them.' "

There are no references to the lines and pages of the transcript where the "uncontradicted" testimony and the testimony of the "one witness" may be found. There is no reference to evidence tending to show what the usual work of decedent was on "that day" or what he was then required to do which made his work "unusual." The "one witness" referred to may have definitely stated, as appellants say, that there was more paper and refuse than usual or normal but there is not one word as to the evidence, if any, which showed or established what, if anything, the decedent had to do with it; what "shot" is and how much it weighs, how decedent was required to handle it, lift it, roll it, move it, or whatever it may have been necessary for him to do about it; whether the paper and refuse was light or heavy and what were the duties of decedent with reference thereto. In short, there is nothing stated about the evidence or any reference made thereto which tended to show that decedent was required to and did work under an increase in the work load or did any extra exertion or that there was any "event or happening beyond the mere employment itself." (Quotation from *United States Steel Corporation* v. *Dykes* (1958), 238 Ind. 599, 613, 154 N. E. 2d 111.)

No reference at all is made to any evidence in support of the asserted allegation in appellants' application that the "cause of injury" was overexertion and strain from duties requiring "the tipping of heavy containers used for scrap and sweepings." Nor is any reference made to any evidence in support of the asserted allegation that the heavy containers which were allegedly tipped were in a department "where ventilation was poor and air polluted." Appellants give us no delineation or resume of the material and pertinent facts established by the evidence. We are left to do this work for

them by reading and sifting through the entire bill of exceptions containing the evidence in quest of evidence to support their proposal, seeking the necessary and permissible reasonable inferences therefrom, and all the while carefully selecting that evidence and those inferences favorable to the award or mitigating against it. We hardly think that such is our obligation, particularly in view of the heavy workload now cast upon this court and the necessity of readily determining other cases of equal importance which now stand advanced on the docket.

We note further that appellants apprise us that the Dykes case, *supra*, "merely holds that where decedent suffered from progressive arteriosclerosis, and where decedent was engaged in his ordinary and usual work, and where, while so engaged, decedent suffers a fatal coronary seizure, then that seizure *is not an accident*." Appellants then continue: ". . . we humbly submit that there is no evidence in the instant case, put there on behalf of appellee, that will bring the instant case under the shelter of the Dykes Doctrine." Following this, appellants assert: "perusal of the preceding pages of this Brief will reveal that it is uncontradicted that decedent herein suffered a fatal myocardial infarction while on the job; there is not the faintest trace of evidence in the instant case to the effect that said myocardial infarction was not "an unlooked for mishap or untoward event not expected or designed. '. . . In order for this cause to be non-compensable it must be brought within the *Dykes Case*. But there was no autopsy performed in this cause. . . . There is no history of heart disease in this case. . . . Nowhere in the entire record can it be found that appellee's counsel asked any question of any witness which included the word 'ateriosclerosis.' . . . Yet, appellee apparently feels that com-

pensation should be denied in the instant case due to the ruling of the Dykes Case."

If we accurately divine appellants' rationalization in this matter, it would seem that the contention is made that there is no evidence in this record that the decedent entertained a diseased heart or that he was afflicted with an arteriosclerosis, progressive or otherwise, and, therefore, the proven fact that he suffered a fatal heart attack while in the performance of the duties of his employment by appellee, which attack was inferentially an "unlooked for mishap or untoward event not expected or designed" by him, established prima facie that he had sustained an accidental injury arising out of and in the course of his employment and cast upon appellee the burden of overcoming such prima facie case, which burden appellee failed to carry. To put the question in less protracted terms, we think it may be stated thusly: Does an employee without previous history, knowledge, or indication of any heart deficiency or impairment sustain an accident arising out of and in the course of his employment, within the meaning of the Workmen's Compensation Act, when he suffers a heart attack while performing the usual, ordinary and normal work of his employment?

A deep and exhaustive study and consideration of the express and implied position assumed by appellants in their brief leads us to the conviction that they take their stand on the premise that the Dykes case, *supra*, being the latest expression of the Supreme Court on the subject, went no farther than to hold, as we have aforementioned, that "where decedent suffered from progressive arteriosclerosis, and where decedent was engaged in his ordinary and usual work, and where, while so engaged, decedent suffers a fatal coronary seizure, then that seizure *is not an accident*," and that

"a fatal seizure, under the above circumstances, is the 'reasonably-to-be-expected' result of decedent's coronary condition.'" (The foregoing quotes are taken from appellants' brief.) In furtherance of their said premise appellants state, in effect, that the said Dykes case, *supra,* did not overrule the cases of *Slaubaugh* v. *Vore* (1952), 123 Ind. App. 497, 110 N. E. 2d 299, and *United States Steel Corporation* v. *Douglas et al.* (1955), 125 Ind. App. 212, 123 N. E. 2d 899, and "Neither did it establish a new test for compensability in cardiac cases."

The rationale of the last referred to statements of appellants appears to be hinged on the declaration in the said Slaubaugh case, *supra,* (a fatal heart attack case), that

> "It was sufficient under the circumstances of this case that injury occurred unintentionally as a result of exertion or strain occasioned in the course of employment."

and on the quotation from Small, Workmen's Compensation Law of Indiana, found in said Douglas case, *supra,* in these words:

> " 'Only where it is clear that the existing disease or condition *alone* was the moving cause of the disability or death has the bar been drawn and compensation denied.' "

The upshot of the whole business is that appellants infer that the Slaubaugh case and Douglas case, *supra,* are authority for the proposition that unless it is established that the heart itself and alone was the moving cause of the disability or death, the case becomes compensable when the heart fails while the employee is engaged in the doing of the work which he was employed to do. And that to escape this rule it must be shown, as stated

in the said Dykes case, *supra,* that the diseased heart and coronary system "had deteriorated to the point when it could no longer stand the work load imposed upon it by his regular and usual work, . . ."

We are not persuaded that the said Dykes case, *supra,* is susceptible of the limited holding which appellants attribute to it. We are not inclined to the view that the effect of the holding of said Dykes case was to make the employer an insurer of his employees. Yet that is the position to which we would be forced if we accept the theory advanced by appellants. Our Supreme Court, in the said Dykes case, in surveying the careful language used in its opinion, apparently appreciated that what it had said might some day be attempted to be reversely applied in a situation such as the one now here, for it protectingly clothed its conclusion with an enunciation which might otherwise have been misunderstandingly thought by some to be obiter dicta, namely:

"The mere showing that he was performing his usual routine everyday task when he suffered a heart attack does not establish a right to ■ workmen's compensation *because there was no event or happening beyond the mere employment itself."* (Emphasis supplied.)

Appellants attack the aforementioned quotation on the ground that it was a modification of a preceding paragraph of the opinion and that it meant that the mere showing that Dykes was doing his routine task did not render his death compensable because there was clear, probative evidence of progressive heart deterioration. However, appellants' explanation loses all force in that it does not take into consideration the vitality of the emphasized words of the quotation.

We feel more restful in the view that the Supreme Court in the said Dykes case, *supra*, did very materially modify some of the statements and expressions ■ in the said Slaubaugh and Douglas cases, *supra*, and while seemingly not considering it necessary to alter the result arrived at in said cases, did depart from the gradual and encroaching theory generally expressed or implied in said cases and previous cases that claims for compensation arising from afflictions of the heart of employees were to be gauged by a standard of less rigidity than that applied to claims of a different nature. In other words, we are impressed that by the said Dykes case, our Supreme Court annulled the idea which was then taking hold that the mere fact that an employee sustained a crippling or fatal heart attack while in the performance of the usual and ordinary tasks of his employment was sufficient to sustain a finding by the Board of an accident arising out of and in the course of his employment, and compensable.

The Court, rather, it seems to us, returned to the original concept in the Workmen's Compensation cases that to render a claim under such circumstances ■■ compensable there must be established a causal connection between the employment or conditions of the employment and the ensuing heart failure. The Court, in said Dykes case, *supra*, announced in substance, as we see it, that to establish a compensable right it must be shown not merely that the employee suffered a heart attack while performing his usual routine everyday tasks but that there must be shown an "event or happening beyond the mere employment itself." Broadly, that it must be shown that the employment, or the conditions of the employment, must have been, in some proximate way, accountable for,

conducive to, or in aggravation of or the hastening of, the failing activity of the heart.

Appellants seek to embellish their proposal by the implication that the "reasonably deducible inference" from the evidence is that "the pattern of work was different that day; that decedent not only performed his usual duties that morning but he also swept up and shoveled more paper and refuse than usual. The fact that the decedent labored at tasks not his ordinary and regular pattern of duties on that day is inescapable; inventory comes only once a year." We have already adverted to appellants' omission to give us a delineation or resume of the evidence in their argument, and this should conclude this phase of the case. However, we are sufficiently apprised by appellee's brief that a conflict existed in the evidence concerning the amount, character and nature of the work done by decedent on his fatal day. It follows that we are bound by the finding of the Board on the fact question referred to by appellants, the same as we would have been bound had said finding favored appellants.

Appellants devote two and one-half pages of their argument to the proposition that in construing the legislative intent, a measure of liberality should be indulged in to the end of benefits to dependents in doubtful cases. The position is advanced that the appellee is a large corporation with relatively unlimited funds, a permanent legal staff, and has at its constant call the advice and consultation of the best medical brains in the middlewest, while "appellant" is a widow with none of "these" advantages. We cannot, however, under the flashing escutcheon of "Liberal Construction" condescend to litigant favor by unctuously undertaking to favorably construe that which warrants no construction. Under the basic precept of government of law and

not of men, we must hold fast to the bulwark raised up by the tested and settled law, both case and code.

Award affirmed.

Pfaff, P. J., and Bierly and Gonas, JJ., concur.

NOTE.—Reported in 174 N. E. 2d 584.