Mary HARRIS, as Widow and Sole Surviving Dependent of Robert Harris, Plaintiff-Appellant,

v.

RAINSOFT OF ALLEN COUNTY, INC., Defendant-Appellee.

No. 2–680 A 187.

Court of Appeals of Indiana, First District.

March 3, 1981.

Rehearing Denied April 20, 1981.

Randy W. Young, Christoff, Cornelius & Young, Fort Wayne, for plaintiff-appellant.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, for defendant-appellee.

NEAL, Presiding Judge.

This is an appeal from a negative award of the Full Industrial Board of Indiana (Board) by plaintiff-appellant Mary Harris (claimant), as widow and sole surviving dependent of Robert F. Harris (decedent), denying her claim for workmen's compensation against Rainsoft of Allen County, Inc. (Rainsoft), for the death of decedent.

We reverse.

STATEMENT OF THE FACTS

The undisputed evidence shows the following: the decedent, Robert F. Harris, was the president and principal owner of Rainsoft. On January 4, 1977, the decedent reported to work, and during the morning hours of that day, a fire occurred within the same building which housed Rainsoft which was witnessed by the decedent. The fire was brought under control and the decedent assisted by caring for an injured workman from an adjoining business. The decedent, although somewhat excited at the time of the first, subsequently pursued his usual daily activities on behalf of Rainsoft. He was seen by his brother at the noon hour, who found him to be his usual and normal self. The decedent returned to his home that evening and, after dining, fell asleep on his living room sofa.

While the decedent was asleep on the sofa, a telephone call was received by claimant. The call was placed by an acquaintance of the decedent and claimant. The caller reported that the premises where Rainsoft was located was on fire, and that the fire officials had requested that the decedent be informed of that situation. The claimant roused the decedent, advised him of the fire, and the decedent immediately left his home in the company of his son, Thomas W. Harris, and his grandson, Thomas R. Harris, and proceeded to the premises of Rainsoft in Grabill, Indiana, approximately four miles away. A few minutes later, they arrived at the premises of Rainsoft and parked within two hundred feet of the structure which encompassed Rainsoft. The building was aflame. The decedent and Thomas R. Harris proceeded to an area just across the street from Rainsoft's premises, and joined a crowd of spectators assembled there. Moments after his arrival, the decedent became pale and fell to the ground. He was taken to a hospital where, despite efforts to revive him, he died at approximately 10:12 p. m.

Dr. George M. Hamilton, the decedent's personal physician, called by claimant, and Dr. Richard M. Nay, a specialist in cardiovascular diseases, called by Rainsoft, were the only medical witnesses to testify. Their testimony is without serious dispute. From their testimony it can be determined that the decedent had a history of heart disease, having suffered his first attack in December, 1975. The condition was diagnosed as arteriosclerotic heart disease with acute myocardial infarction. He suffered a significant amount of myocardial injury by his first attack. Acute myocardial infarction is a term which describes changes that occur in the heart muscle as a result of the shutting off of the blood supply to the heart muscle. This usually occurs where the coronary artery is obstructed by the hardening process and causes a lack of blood supply to

a specific area of the heart muscle. The affected heart muscle then dies and is healed by a scar. Arteriosclerosis is hardening of the arteries. An arteriosclerotic heart does not manifest at once but is a condition which develops over a period of time. The condition did not and would not disappear after the 1975 myocardial infarction, but was an ongoing disease which inexorably continues. While the damaged heart muscle will heal, the hardening process in the arteries continues and it is to be expected that episodes of either infarction or of pain in the heart, called angina pectoris or weakening of the heart muscle, may occur in the future. Emotional stress can be a factor in precipitating certain abnormalities of heart disease. Since the decedent had a serious heart condition of relatively longstanding, the excitement and stress surrounding the fire could have been a factor in precipitating the heart attack.

Dr. Hamilton stated that the cause of death was an arrhythmia pattern of auricular fibrillation resulting in cardiac arrest. In his opinion *it had been precipitated by the emotional stress* of the evening fire. Dr. Nay, while conceding the real possibility of such stress precipitating the fatal arrhythmia, was of the opinion that such causal relationship was not predictable with any certainty.

### ISSUE

The Board, in finding No. 13, stated the following as the basis of its ruling:

"The Full Board, by majority of its members, finds that the death of the Decedent, on January 4, 1977, did not arise out of his employment. As a matter of law, under the *United States Steel Corporation vs. Dykes,* (1958), 238 Ind. 599 [154 N.E.2d 111], there was no extra exertion beyond the mere riding to the fire scene, walking from the pick-up truck, and standing as a spectator across the street from the office fire. Also, that there was no trauma preceding the attack, as is required under *Sollitt Construction Company vs. Walker,* (1956), Ind. Ct. of Appeals [127 Ind.App. 213], 135 N.E. (2d) 623."

Claimant's sole assignment of error is that this finding is contrary to law. Narrowly stated, and likewise narrowly argued by the parties, the issue is:

Is a heart attack, as an aggravation of a preexisting heart condition, which results from a work-related, mental, emotional, or psychological impact or stimulus, as distinguished from a physical impact or stimulus, compensable under the Workmen's Compensation Act?

### DISCUSSION AND DECISION

■ Compensation will be paid for personal injury or death by accident arising out of and in the course of employment. Ind. Code 22–3–2–2. The basic rule for determining the compensability of death resulting from a heart attack sustained by an employee afflicted with a preexisting heart disease while performing his employment is found in *United States Steel Corporation v. Dykes,* (1958) 238 Ind. 599, 154 N.E.2d 111. In that case our Supreme Court held that some unusual exertion or aggravation must be present to justify the classification of the attack as an accident under the statute. The *Dykes* decision was analyzed in *Douglas v. Warner Gear Division of Borg Warner Corporation,* (1961) 131 Ind.App. 664, 174 N.E.2d 584, as follows:

"The Court, in said *Dykes* case, *supra,* announced in substance, as we see it, that to establish a compensable right it must be shown not merely that the employee suffered a heart attack while performing his usual routine everyday tasks but that there must be shown an 'event or happening beyond the mere employment itself.' Broadly, that it must be shown that the employment, or the conditions of the employment, must have been, in some proximate way, accountable for, conducive to, or in aggravation of or the hastening of, the failing activity of the heart."

131 Ind.App. at 672–73, 174 N.E.2d 584. A claimant must show more than a mere coincidence in time between the employment and the fatal attack. *Consumers Company v. Jefferson,* (1965) 138 Ind.App. 499, 209 N.E.2d 32. The *Consumers Company* court

found that the *Dykes* rule was satisfied upon a showing that the afflicted employee worked one-and-a-half hours overtime and had climbed a 30 foot flight of stairs immediately preceding his fatal attack. *See also, Chestnut v. Coca Cola Bottling Company,* (1969) 145 Ind.App. 504, 251 N.E.2d 575; and *Inland Steel Company v. Almodovar,* (1977) Ind.App., 361 N.E.2d 181, concerning the application of the *Dykes* rule to preexisting conditions generally. It has further been held that a fatal heart attack suffered by an employee with preexisting heart disease was compensable when the attack proximately resulted from external trauma causing shock and excitement. *Sollitt Construction Company, Inc. v. Walker,* (1956) 127 Ind.App. 213, 135 N.E.2d 623.

As we understand the Board's decision, the Board requires a showing either of some *physical* exertion, over and above that generally required of the employee, or some *physical* impact or trauma, which precipitates the heart attack in order for the injury to be compensable. The Board did not reach the consideration of whether a sufficient causal relationship between the fire and the decedent's heart attack was established, since it found that neither of the above elements were present.

We think it was error for the Board, as a matter of law, to require a physical stimulus, either in extra exertion or trauma, for the heart attack to be compensable. We think that in the proper case a non-physical, psychological, mental, or emotional stimulus may satisfy the "event or happening beyond the mere employment itself" requirement of the *Dykes* rule in heart attack cases, and that the employee need not in all cases be engaged in a physical task, or sustain physical trauma, for his heart attack to be compensable.

We have found no Indiana cases addressing the issue of the compensability of heart attack, sustained by an employee with a preexisting heart condition, induced by mental, emotional, psychological or otherwise non-physical stimulus, all other employment-related prerequisites being satisfied; all cases found involved a physical impact of some kind precipitating the heart attack. No Indiana case, however, foreclos-

es the possibility of such psychological stimulus as satisfactory under the *Dykes* doctrine. As we read finding No. 13, the Board considers some physical stimulus or trauma essential.

Authority abounds in other jurisdictions for the proposition that a heart attack is compensable when induced by work-related unusual mental, emotional, or psychological stimulus and suffered by an employee with preexisting heart disease. We read in 1B Larson, *Workmen's Compensation Law* (1976) the following:

"[Sec. 38.65] When the causal component in a heart failure or cerebral hemorrhage case is mental, nervous, psychic or emotional rather than physical, the commonest legal question has been whether this could be said to be an 'injury' for compensation purposes. As will be shown later [Sec. 42.21], the cases are virtually unanimous in holding that such a result is indeed an 'injury,' although the origin of the episode may have been non-physical. ... When the stimulus is sudden and dramatic, the 'by accident' problem is at the minimum, as when a heart attack is precipitated by the strain of a cab driver's efforts to avoid an accident, or by a truck driver's fright on awakening to find his truck on fire, or by a night watchmen's [sic] excitement on observing suspicious acts of two men.

*       *       *       *       *       *

[Sec. 42.21] The first category is that in which a mental (as distinguished from a physical) impact or stimulus results in a distinct physical injury. Here the decisions uniformly find compensability. There appears to have been only one *contra* holding reported in the last quarter century.

The easiest type of case in which to connect the stimulus and the physical injury is that in which the precipitating event is sudden and the result immediate. In this group would fall such cases as those involving a sudden noise or flash resulting in paralysis, heart attack, and the like, accidents or near-accidents precipitating heart attacks or cerebral hem-

orrhages, and assorted other sudden frights accompanied by direct physical consequences." (Footnotes omitted.)

This learned treatise cites many cases in support of the advanced proposition, including, *e. g., Eastman C. v. Industrial Accident Commission*, (1921) 186 Cal. 587, 200 P. 17 (excitement); *Little v. Korber & Company*, (1963) 71 N.M. 294, 378 P.2d 119 (emotional upset); *Pukaluk v. Insurance Company of North America*, (1958) 7 A.D.2d 676, 179 N.Y.S.2d 173 (fright); *Klimas v. Trans Caribbean Airways, Inc.*, (1961) 10 N.Y.2d 209, 219 N.Y.S.2d 14, 176 N.E.2d 714 (anxiety or pressure).

In Workmen's Compensation cases Indiana has recognized the reverse proposition, that is, where a non-incapacitating physical injury causes a psychological disability. The court in *E. I. du Pont de Nemours & Company v. Green*, (1945) 116 Ind.App. 283, 63 N.E.2d 547, held that proof of an incapacitating neurosis which resulted from a minor non-disabling physical injury, established a compensable right. A like result, in principle, was reflected in *Olin Corporation v. Calloway*, (1974) 160 Ind.App. 69, 309 N.E.2d 829.

*Campbell v. Colgate-Palmolive Company*, (1962) 134 Ind.App. 45, 184 N.E.2d 160, was a case where an emotional upset allegedly precipitated a coronary occlusion causing the death of the workman. The Board ruled that the decedent did not sustain an accidental injury arising out of his employment. The court, on appeal, simply ruled that there were conflicting inferences before the Board and the court, on appeal, according to its standard of review, would not substitute its judgment for that of the Board. The court *did not* reject the possibility of the establishment of a compensable right for a work related emotional disturbance resulting in a heart attack under some set of facts.

■ Clearly, the burning of a business establishment is not a routine event. As a causal component, we see little distinction between unusual exertion on a diseased heart caused by physical stimulation or external trauma, or whether the fatal stimu-

lation was mental, emotional or psychological in origin.

■ We are of the opinion that the Board erred in limiting its consideration to physical exertion or trauma. This cause is reversed and the Board is ordered to proceed not inconsistent with this opinion.

Reversed.

ROBERTSON and RATLIFF, JJ., concur.