**Imogene C. HOLLOWAY,**
**Plaintiff-Appellant,**

**v.**

**MADISON–GRANT UNITED SCHOOL**
**CORPORATION, Defendant-Appellee.**

**No. 2–183A4.**

Court of Appeals of Indiana,
First District.

April 25, 1983.

Rehearing Denied May 23, 1983.

Daniel J. Harrigan, Bayliff, Harrigan, Cord, Maugans & Russell, P.C., Kokomo, for plaintiff-appellant.

Edward N. Kalamaros, Michael J. Anderson, Edward N. Kalamaros & Associates, P.C., South Bend, for defendant-appellee.

RATLIFF, Judge.

## STATEMENT OF CASE

Imogene Holloway, widow of Merrill Holloway, appeals from the Industrial Board's denial of her claim for workmen's compensation benefits as a result of Merrill's death from heart failure. We affirm.

## FACTS

Merrill was Assistant Superintendent of the Fairmount Middle School, and on April 28, 1980, he was engaged in performing the regular duties of his position. He handled a visit from the state fire marshal, a rather infrequent but not wholly unexpected occurrence, at which time the fire marshal noted thirty-eight specific violations of the fire code needing correction before the school could reopen in the fall. At approximately 3:00 p.m. on that day Merrill investigated a minor school bus accident which turned out to be a "fender bender" with no injuries. Merrill also had the responsibility of making a presentation to the school board that evening concerning the consolidation and construction of a new middle school. Contrary to his usual practice of resting between dinner and the school board meeting, Merrill worked on his presentation in favor of the controversial project and in anticipation of a certain amount of opposition to it.

Merrill was fifty-six years old with an enlarged heart showing progressive arteriosclerotic heart disease. He had suffered an acute inferior wall myocardial infarction on February 3, 1979, and was treated for an impending myocardial infarction on November 26, 1979. He was also a cigarette smoker who had gained twelve pounds between December 1979 and April 1980, weighing 277.5 pounds on April 21, 1980. His father had died at age 47 of a myocardial infarction, and doctors considered Merrill a very high risk for an acute cardial event.

Merrill began his presentation before the school board, and in the middle of it he suffered a fatal heart attack. Imogene filed a Form 10 Application with the Industrial Board of Indiana. The hearing officer denied her claim, making the following findings:

"5. That the proximate cause of Merrill E. Holloway's death was the natural

progression of his advanced coronary heart disease and the gradual lessening of his heart's ability to combat the disease.

6. That plaintiff has not carried her burden of proof on proximate cause, in that medical conclusions offered by plaintiff were too speculative to provide the specific link between employment and heart attack required by *Dykes* ....

7. That the position of Assistant Superintendent required decedent to react to various contingencies as may arise in the administration of a school district and as such was a highly stressful position. Because of the nature of the administrative position Mr. Holloway occupied, he was expected to deal with a variety of stressful school related problems on a recurring basis and was expected to put in long hours by attending evening school board meetings.

8. That said heart failure was not proximately caused by unusual mental, emotional or psychological stimulus because there was no identifiably significant increase in stress above and beyond the mental, emotional and psychological stimulus Mr. Holloway had been exposed to in the ordinary, usual and routine carrying out of his duties as assistant superintendent.

9. That the showing by plaintiff of proximate cause is legally insufficient to meet the *Dykes* test of 'unusual exertion' as that test was applied to the mental exertion situation in *Harris v. Rainsoft*, because the facts have not disclosed any sudden mental, emotional or psychological stimulus but rather show the inability of a deteriorating heart to meet the routine demands of the assistant superintendent's position."

Record at 71. The hearing officer's findings, conclusions, and negative award were affirmed by the full Board.

### ISSUE

Did the Board err in finding that the events during April 28, 1980, did not constitute unusual stress above and beyond that normally associated with the duties of the assistant superintendent's office and therefore were not the cause of Merrill's death?

### DISCUSSION AND DECISION

■ Imogene challenges the Board's findings that the stress to which Merrill was subjected on April 28, 1980, *viz.,* the visit of the fire marshal, the investigation of the school bus accident, and the presentation of a controversial project at the evening school board meeting, was not above the usual, ordinary, and routine stress of his position and therefore that this stress, rather than Merrill's physical condition, was not the cause of his fatal heart attack. She argues that the recent case of *Harris v. Rainsoft of Allen County, Inc.,* (1981) Ind. App., 416 N.E.2d 1320, relaxed the rule of *U.S. Steel Corporation v. Dykes,* (1958) 238 Ind. 599, 154 N.E.2d 111, which requires some sudden or unusual exertion beyond the normal exertions and stress of the employee's position in order to be compensable. We disagree. Contrary to Imogene's contentions, we do not read *Harris* as dispensing with the requirement of some unusual exertion or sudden shock as laid down in *Dykes.*

In *Dykes* our supreme court reversed an award of benefits where the claimant's decedent had an arteriosclerotic heart condition and the fatal heart attack was not preceded by some type of untoward or unexpected incident or there was no evidence of the aggravation of a previously deteriorated heart or blood vessel. The decedent had been a grinder in a steel mill in Gary, Indiana, for more than eight years. He was approximately fifty-five years of age, well developed physically, and weighed 160 pounds at the time of his death. His job duties involved heavy physical labor requiring lifting, standing, and walking during the regular work period, but on the day in issue his work had slowed and was less than usual. The court stated,

"The mere showing that he was performing his usual routine everyday task when he suffered a heart attack does not establish a right to workmen's compensation because there was no event or hap-

pening beyond the mere employment itself."

238 Ind. at 613, 154 N.E.2d at 119.

In *Harris* this court reversed a denial of benefits by the Board, holding that a fatal heart attack suffered by an employee with a preexisting heart disease is compensable even though it results from a non-physical work-related mental, emotional, or psychological impact or stimulus. Decedent there was the owner of a business which was located in a building in which a fire had occurred during the morning working hours of January 4, 1977. Decedent had a history of heart disease dating from 1975 and was visibly upset by the fire, but he continued working during the day and took a nap at home after dinner. During his nap his wife received a telephone call informing her that the part of the building in which his business was located was on fire. The claimant awakened her husband, and he left for the scene with his son and grandson. Moments after arriving, decedent collapsed and, despite efforts to revive him, he died at the hospital. The court held that emotional stress could be a factor in precipitating the heart attack and that

> "it was error for the Board, as a matter of law, to require a physical stimulus, either in extra exertion or trauma, for the heart attack to be compensable. We think that in the proper case a non-physical, psychological, mental, or emotional stimulus may satisfy the 'event or happening beyond the mere employment itself' requirement of the *Dykes* rule in heart attack cases, and that the employee need not in all cases be engaged in a physical task, or sustain physical trauma, for his heart attack to be compensable."

416 N.E.2d at 1323. After reviewing case law and learned authorities on the subject, Judge Neal concluded,

> "Clearly, the burning of a business establishment is not a routine event. As a causal component, we see little distinction between unusual exertion on a diseased heart caused by physical stimulation or external trauma, or whether the fatal

stimulation was mental, emotional or psychological in origin."

416 N.E.2d 1324.

The question in this case, then, is whether the non-physical events of April 28, 1980, were routine events or events which created stress of an unusual or unexpected magnitude beyond the mere employment itself. The Board found that these events were a routine, though normally stressful, part of Merrill's job, and there is evidence in the record to support such a finding. There was testimony that Merrill's meeting with the fire marshal was conducted in a congenial and professional manner and that the problems noted by the fire marshal were quite common ones. Moreover, it was suggested that Merrill could use the fire marshal's report to support his position favoring consolidation and construction of a new middle school. Further, as was the meeting with the fire marshal, so the investigation of the minor bus accident was a routine task of the assistant school superintendent. While there was testimony that such an incident would be stressful to the official involved and that Merrill was a conscientious person, concerned with the well-being of the students, there was also testimony by those with Merrill at the time that he neither expressed anxiety over the incident nor appeared to be anxious about it. Likewise, those who spoke with Merrill prior to and during the school board meeting testified that he appeared calm, well-prepared, and seemed confident of what he was doing and in control of the situation. The superintendent, in fact, testified that the April 28th Board meeting was not appreciably different from other meetings where the consolidation issue was discussed and that such meetings, while inherently stressful, go "along with the territory." Record at 322–11. Finally, medical testimony indicated Merrill could have succumbed to heart failure while at home in bed or while engaged in any other activity.

As noted by one authority on the subject of workmen's compensation, where the causal component of an injury is stress, the issue becomes whether that stress is

sufficiently unusual to satisfy the accident requirement of the statute. 1B A. Larson, *Workmen's Compensation Law* § 38.65, p. 7–199 (1982). *See* Ind.Code § 22–3–2–2. If the stimulus is sudden and dramatic—as was the fire in *Harris*—then the accident problem is minimized. *Id.* But where the triggering event is not so colorful and the contribution of stress from employment is of a more protracted nature, such as worry, overwork, frustration, or tension, the question becomes a closer one, *id.* at 7–202, and must be left to the trier of fact. Two integration cases involving school officials from other jurisdictions and reaching opposite results illustrate this point well. In *McClain v. Board of Education,* (1959) 30 N.J. 567, 154 A.2d 569, a heart attack suffered by a school superintendent following a PTA meeting concerning racial integration was held a compensable injury caused by unusual emotional strain generated by a hostile segment at the meeting who were agitated by the superintendent's position. However, in *Goldstein v. Industrial Commission,* (1974) 22 Ariz.App. 319, 526 P.2d 1274, the court of appeals would not substitute its decision for that of the Commission which denied benefits to a teacher's widow who had failed to prove the requisite causal connection between his death and the stress and worry caused by confirmed lies and fabrications of unfounded racist charges against him.

█ Our standard of review is similar to that applied by the Arizona court. So long as there is evidence in the record to support the Board's findings, we may not set them aside. Where the evidence is conflicting we may not reweigh it or judge the credibility of witnesses; that is the function of the Board. *Lovely v. Cooper Industrial Products,* (1981) Ind.App., 429 N.E.2d 274, 276, *trans. denied.* Here the evidence as to whether the stress of the day was unusual or routine and whether it was or was not the cause of the coronary was conflicting. We must ignore any evidence which is not favorable to the Board's findings and look only to those facts and the reasonable inferences therefrom which support such findings. *Soetje & Arnold, Inc. v. Basney,*

(1941) 218 Ind. 538, 34 N.E.2d 26, 27. If there is evidence of probative value to support the Board's determination we may not find that determination to lack a factual foundation. *Cooper.* Just because another result might have been reached under the same facts and circumstances is not cause for us to replace the Board's conclusion with one which we might have preferred. *Id.* Because there was evidence of probative value to support the Board's findings that the stress of Merrill's job on the day in question was normal, not unexpected, and not the cause of his death, we must affirm the Board's decision. It is not contrary to law.

Affirmed.

ROBERTSON, P.J., and NEAL, J., concur.