**Linda F. BRANSON, Appellant (Plaintiff Below),**

v.

**VIOLENT CRIME COMPENSATION DIVISION, A DIVISION OF the INDUSTRIAL BOARD OF INDIANA, Appellee (Defendant Below).**

No. 93A02–8608–EX–286.

Court of Appeals of Indiana, Fourth District.

March 18, 1987.
Rehearing Denied April 28, 1987.

---

Timothy M. Bemis, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Thomas Ralph Hamill, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Linda F. Branson appeals the denial of benefits, by the Violent Crime Compensation Division of the Industrial Board of Indiana, for the death of her son, James A. Jenkins. The Industrial Board found Jenkins's conduct was a contributing factor, under IND. CODE 16–7–3.6–11(c), in the infliction of the injuries which resulted in his death. Branson argues the Board's decision is contrary to both the law and the facts.

We affirm.

## FACTS

On July 28, 1984, the victim James A. Jenkins and his friends, Mike DeLiget and Kevin Kilmurry, drove from Portage to Gary, Indiana and parked DeLiget's car in the 400 block of Harrison Street. DeLiget and Kilmurry testified the three men had gone to Gary to purchase marijuana. Jenkins got out of the car and started to walk across the street. An unidentified Latin man came out of a nearby house and told the men to move their car. Jenkins walked back to the car and a verbal argument developed between Jenkins and the unidentified man, which soon escalated into a physical fight. Conflicting testimony was given regarding who was the initial aggressor. DeLiget and Kilmurry testified the unidentified man pushed Jenkins and knocked him down. Daniel Ochoa, a neighborhood resident who witnessed the fight, testified Jenkins uttered the words "No Spic is going to tell me what to do" before the unidentified man pushed Jenkins. A crowd gathered and several onlookers tried to break up the fight. The initial altercation ended when DeLiget and Kilmurry held Jenkins while others held the unidentified man. Ochoa told the police that the unidentified man began to walk away. Witnesses agree that Jenkins broke loose and became the initial aggressor in the second altercation by attacking the unidentified man. During the second fight, Maurice Chevez intervened and stabbed Jenkins three times in the chest, abdomen and arm. Jenkins later died as a result of these stab wounds.

Linda F. Branson, James A. Jenkins's mother, filed a claim for benefits with the Violent Crime Compensation Division of the Industrial Board of Indiana. On February 22, 1985, the Violent Crime Compensation Division entered a preliminary determination denying Branson's claim because Jenkins engaged in misconduct which contributed to his injury and was involved in an illegal act, a drug transaction, at the time the incident occurred. An evidentiary hearing was held on June 12, 1985, and the hearing officer found, in her written decision on January 21, 1986, that Jenkins contributed to the infliction of the injuries which ultimately led to his death and therefore Branson was not entitled to benefits from the Violent Crime Compensation Fund. The hearing officer's decision states:

"FINDINGS OF FACT

1. That the issues for resolution are:
   a. Whether the victim's conduct on the evening of July 28, 1984, was a contributing factor in the infliction of the injuries which resulted in his death and
   b. Whether the victim was engaged in criminal activity at the time of the incident which resulted in his injury and death.

2. That at approximately 9:30 p.m. on July 28, 1984, James A. Jenkins sustained stab wounds to his chest, abdomen and left arm; said injuries subsequently resulted in the victim's death.

3. That the incident in question occurred in the vicinity of the 400 Block of Harrison Street in Gary, Lake County, Indiana.

4. That according to written statements made to the Gary Police Department authored by Kevin J. Kilmurry and Michael T. Deliget and Deliget's additional testi-

mony at hearing, on the evening of July 28, 1984, James A. Jenkins, Kevin J. Kilmurry and Michael T. Deliget travelled in Deliget's vehicle from Portage, Indiana, to a location on Harrison Street in Gary, Indiana, for the purpose of buying a quantity of marijuana. Kilmurry's written statement further indicated 'I was with my friends Jim Jenkins and Mike Deliget. We were in Mike's car. Mike and Jim wanted to go and buy some marijuana. Jim Jenkins knew of a dope house on the 400 Block of Harrison Street in Gary where we could buy some marijuana. Jim directed us to the 400 Block of Harrison.' Additionally in response to a specific question by Detective Papadakis of 'How did you know about this dope house on the 400 Block of Harrison (433 Harrison Street)?', Kilmurry stated 'We learned it from Jim Jenkins. He was the one who directed us to it. Mike and Jim were looking to buy the marijuana.'

5. That while in the vicinity of the 400 Block of Harrison, James A. Jenkins became involved in a verbal altercation with an unidentified Latin male; said verbal altercation escalated into a physical confrontation. In his statement to Gary Police, Deliget indicated 'Jenkins and the Latin guy exchanged a words, I don't know exactly what was said. Then I saw the Latin guy hit Jenkins first and they started fighting.' Another witness to the incident in question, one Daniel Ochoa, stated to police: 'The white guy who was stabbed stated to the Latin guy 'No Spic is going to tell me what to do,' and then he jumped out of the car. The white guy and the Latin guy then started fighting. They were hitting each other hard.'

6. That while the fight was occurring, a group of observers gathered. Several of the observers attempted to break the fight up. In his statement to police, Kevin Kilmurry indicated 'some other guys that were there broke up the fight. Mike grabbed Jim to pull him back. I then grabbed Jim also to hold him. Mike and I were trying to hold Jim from going back to fight. Jim got real wild and broke free from us. Jim then went back after the guy he was fighting.' Michael Deliget's testimony at hearing also substantiated that Jenkins reactivated the fight by breaking loose from his friends' hold on him and 'running back into the Latin subject again'.

7. That shortly after the fight was renewed by Jenkins, a second Latin male, later identified as Maurice Chevez, intervened in the fight and attacked Jenkins with a knife, stabbing him repeatedly.

8. That prior to the infliction of his fatal wounds, the victim, James A. Jenkins, had a clear opportunity to retreat from and cease doing combat but chose not to retreat and instead renewed the altercation.

9. That the victim and his two companions left Portage, Indiana, and travelled to the 400 Block of Harrison Street in Gary with specific intent to commit an illegal act; towit, to purchase a controlled substance.

## CONCLUSIONS OF LAW

1. I.C. 16–7–3.6–11(c) provides:
   '(c) In determining the amount of award the division shall determine whether the victim contributed to the infliction of his injury or death. If the division finds that the victim did contribute to the infliction of his injury or death the division shall deny an award . . .'

2. The victim, James A. Jenkins, did contribute to the infliction of the July 28, 1984, injuries which ultimately lead to his death.

3. The Claimant, Linda F. Branson, is not entitled to benefits from the Violent Crime Compensation Fund.

## ORDER

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the denial of the claim of Linda F. Branson is sustained."

Branson appealed this decision to the Full Industrial Board, which held a hearing on April 28, 1986 and rendered its written

decision adopting the findings of the hearing officer on July 16, 1986. Branson now appeals the Full Board's decision.

### Issues

Branson raises two issues, restated, for determination on appeal:

I. Whether the decision of the Board is contrary to law because the word "contributed" in I.C. 16–7–3.6–11(c) does not include Jenkins's initiating an attack on the unidentified man after the first physical fight had stopped.

II. Whether there is sufficient evidence to support the Board's conclusion that the victim contributed to the infliction of the injury which led to his death.

### DECISION

■ Our review of an administrative order or decision is limited to consideration of whether the agency possessed jurisdiction over the matter decided, whether the order was made in conformity with proper legal procedure, was based on substantial evidence, and does not violate any constitutional, statutory or legal principle. *Young v. Williamson* (1986), Ind.App., 497 N.E.2d 612; *Bolerjack v. Forsythe* (1984), Ind. App., 461 N.E.2d 1126. The Industrial Board's responsibility as trier of fact in Violent Crime Compensation cases is to make findings which reveal its analysis of the evidence and are specific enough to permit intelligent review of the Board's decision. In reviewing the Industrial Board's decision, we will not reweigh the evidence nor assess the credibility of the witnesses. We will examine the findings of fact to see if they are sufficient to support the decision. We will review the evidence in the record only to see if there was competent evidence of probative value, whatever its weight, to support the Board's findings. We will consider only the evidence most favorable to the award, including any and all reasonable inferences deducible from the proven facts. *See generally, Rockwell v. Byrd* (1986), Ind.App.,

498 N.E.2d 1033; *Holloway v. Madison-Grant United School Corp.* (1983), Ind. App., 448 N.E.2d 27, 31; *Tonn and Blank, Inc. v. Curtis* (1967), 141 Ind.App. 115, 226 N.E.2d 551, 553.

### I. Victim's Contribution

Branson argues her son did not "contribute" to the infliction of injuries which caused his death. First, Branson claims no drug transaction took place nor was Jenkins attempting to purchase illegal drugs. Second, Branson maintains Jenkins's actions were in self-defense. Third, Branson argues Jenkins could not have "contributed" to his own murder.

■ The Industrial Board asserts that it has properly interpreted and applied the word "contributed" in I.C. 16–7–3.6–11(c) and its denial of benefits to Branson is not contrary to law.

I.C. 16–7–3.6–11(c) provides:

"In determining the amount of award, the division shall determine whether the victim *contributed* to the infliction of his injury or death. If the division finds that the victim did *contribute* to the infliction of his injury or death the division shall deny an award, unless the division also finds that the victim's conduct was attributable to an effort to:

(1) prevent a crime from occurring in his presence; or

(2) apprehend a person who committed a crime in his presence." [1]

(emphasis added).

The Legislature did not define the word "contributed". Under I.C. 1–1–4–1, it is the duty of this court to construe words according to their "plain meaning." The word "contribute" means "to give or supply in common with others", *Webster's II New Riverside University Dictionary*, 1984, or "to lend assistance or aid to a common purpose; have a share in any act or effect". *Blacks Law Dictionary*, 1976. Thus, I.C. 16–7–3.6–11(c) is clear and unambiguous. If a victim has a share in any act

---

1. We note the legislature amended this section in 1985 by adding at the end of subsection (c) "; the victims contributory conduct does not render the victim ineligible for compensation." This added clause clearly refers to excuseable acts of contribution under (c)(1) and (c)(2).

or effect, bringing about his own injury or death, the Board shall deny an award of compensation. Although the word "contribute" may have different meanings in different contexts,[2] the purpose of the Compensation for Victims of Violent Crimes Act is clear—to provide relief for innocent victims of violent crimes. The Act establishes an administrative agency to compensate victims or their surviving dependents for their out-of-pocket expenses, reduced by the amount of other benefits received. In this context, to contribute is to have a share in any act or effect or to help cause the violent crime.

■ The Board properly applied the word "contributed" to find Jenkins was the initial aggressor in the second fight which led to the infliction of injuries which caused his death. It was not necessary that the Board find Jenkins intended to or attempted to or did purchase illegal drugs. It is sufficient that the Board found Jenkins contributed to his injury by initiating the second physical fight with the unidentified man when Jenkins had a clear opportunity to retreat after the first fight had ended.

■ Branson argues Jenkins's actions were in self-defense. The evidence is conflicting as to whether Jenkins was acting in self-defense initially when first pushed by the unidentified man. However, there is no conflict regarding Jenkins behavior after he was separated from the unidentified man. Jenkins's friends, DeLiget and Kilmurry, and a neighborhood resident who witnessed the entire episode, Daniel Ochoa, told the police that Jenkins broke free of his friend's grasp and attacked the unidentified man after the first fight had been stopped. Jenkins acted with fault by initiating a second physical fight so self-defense is not available as a defense for his actions. *See generally, Brooks v. State* (1982), Ind., 434 N.E.2d 878; *Sanders v. State* (1981), Ind., 428 N.E.2d 23; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260; I.C. 35–41–3–1; I.C. 35–41–3–2.

■ Branson also maintains Jenkins could not contribute to his own murder. Branson's entire argument, set out in her brief, is as follows:

> "Since self-defense law does not appear to be applicable to the actions of the man identified as Maurice Chavez [sic], who stabbed the victim, and he was charged with Murder, for the purposes of this cause, it is a reasonable assumption that James A. Jenkins was a victim of Murder. I can find no law that states that on [sic] can contribute to his own murder. Mr. Jenkins, the victim, therefore, could not have possibly contributed to his own murder."

Branson makes no cogent argument and cites no statutory or case authority for this proposition and has therefore waived this argument on appeal. Ind. Rules of Appellate Procedure, Rule 8.3(A)(7); *Blair v. Emmert* (1986), Ind.App., 495 N.E.2d 769; *Bank of New York v. Bright* (1986), Ind. App., 494 N.E.2d 970; *Matter of Trust of Loeb* (1986), Ind.App., 492 N.E.2d 40.

## II. *Sufficiency of the Evidence*

■ Branson argues the evidence is insufficient to support the Board's conclusion that Jenkins contributed to the infliction of the injury which led to his death. The Board responds that there is substantial undisputed evidence that after the initial fight was stopped by onlookers, Jenkins was held by DeLiget and Kilmurry and then broke free and attacked the unidentified man.

The Board's Finding of Facts and the record show both DeLiget and Kilmurry told the police that after the first fight had been stopped, the two men held their friend in an effort to prevent further violence. DeLiget and Kilmurry told police, and DeLiget testified at the hearing, that Jenkins's became wild, broke free, and attacked the unidentified man. Daniel Ochoa, a neighborhood resident who witnessed the altercations between Jenkins

---

**2.** *See also Davidson v. State* (1968), 249 Ind. 419, 233 N.E.2d 173 (contributing to the delinquency of a minor case, "contribute" means "to give or grant in common with others"); *Earle v. Porter* (1942), 112 Ind.App. 71, 40 N.E.2d 381 (in contributory negligence context, "to contribute is to cause or to furnish some aid in causing the result.").

and the unidentified man, also told the police that Jenkins was the initial aggressor in the second physical fight. Jenkins clearly had an opportunity to walk away from the first fight, but instead Jenkins chose to attack the unidentified man. Had Jenkins retreated, it is highly unprobable that Maurice Chevez would have stabbed him. This evidence is sufficient to support the Board's finding that Jenkins contributed to the infliction of the injury which caused his death.

Affirmed.

SHIELDS, P.J., and YOUNG, J., concur.